UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
————————————————————————

TEARRE WILLIAMS,

                          Plaintiff,              9:25-CV-0903
                                                  (GTS/MJK)

          v.

SHAWANGUNK DOCCS, et al.,

                          Defendants.
————————————————————————

Tearre Williams, Plaintiff *pro se*

Mithcell J. Katz, U.S. Magistrate Judge

## DECISION AND ORDER

## I.    INTRODUCTION

    Williams commenced this action by filing a complaint pursuant to 42

U.S.C. § 1983 ("Section 1983") with an application to proceed *in forma*

*pauperis* ("*IFP*"). (Dkts. 1, 14). By Decision and Order filed on September 19,

2025 (the "September 2025 Order"), United States District Court Judge

Glenn T. Suddaby granted the *IFP* application and reviewed the sufficiency

of the complaint under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. §

1915A(b)(1). (Dkt. 15). Based on that review, the Court dismissed Williams's

claims without prejudice for failure to state a claim. (*Id.*). Willaims was afforded the opportunity to file an amended complaint. (*Id.*).

On October 22, 2025, plaintiff filed a submission with the Court. (Dkt. 16).

## II.    DISCUSSION

The filing of amended and supplemental pleadings is governed by Fed. R. Civ. P. 15. A party may amend, as of right, if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Fed. R. Civ. P. 12(b), (e), or (f), whichever is earlier. *See* Fed. R. Civ. P. 15. An amended complaint is intended to replace and supercede in its entirety the previous complaint. Once accepted for filing, the amended complaint becomes the operative pleading, and the original complaint is no longer considered. *See Williams v. Annucci,* No. 9:20-CV-1417 (BKS/TWD), 2021 WL 4775970, at *6 (N.D.N.Y. Oct. 13, 2021) ("[I]t is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.") (citing *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).  This requirement is buttressed by the Local Rules of Practice for the Northern District of New York ("Local Rules"), which provide, in pertinent part, that

amended pleadings must be complete pleadings which will supersede the original pleading in all respects. *See* N.D.N.Y.L.R. 15.1(a). The Local Rules further state that a "party shall not incorporate any portion of its prior pleading into the proposed amended pleading by reference." *Id.* One of the purposes of the requirement that an amended complaint be a complete pleading, is to ensure that all the allegations asserted against the defendants are contained in a single document, thereby reducing the likelihood that a party will overlook one or more allegations against him. *See Walker v. Fischer*, No. 10-CV-1431 (MAD/DEP), 2012 WL 1029614, at *10 (N.D.N.Y. Mar. 26, 2012) (citation omitted). This requirement eliminates the confusing nature of "piecemeal" amended complaints. *See Santiagocruz v. Doe #1*, No. 9:21-CV-0806 (TJM/ML), 2021 WL 5629097, at *4 (N.D.N.Y. Dec. 1, 2021) . In other words, an amended complaint must include all the allegations against each defendant against whom the case is going forward so that the amended complaint may stand alone as the sole complaint in the action. "While we have insisted that the pleadings prepared by [pro se litigants] be liberally construed . . . we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *Allevato v. Howard*,

3

No. 9:21-CV-1159 (GTS), 2022 WL 42436, at *2 (N.D.N.Y. Jan. 5, 2022)
(citing *McNeil v. U.S.*, 508 U.S. 106 (1993)). Plaintiff's submission (Dkt. No.
16) does not comply with N.D.N.Y. Local Rule 15.1. Specifically, the
submission does not include a caption, a list of parties, any claims, or any
request for relief. Upon review of the submission, it is unclear who the
defendants are, what claims Williams is asserting, and what relief Williams
seeks. As noted, Williams may not submit an amended complaint and at the
same time proceed with the original complaint. Compliance with this
Court's local rules is "not merely technical in nature." *See Cusamano v.
Sobek*, 604 F.Supp.2d 416, 508 (N.D.N.Y. 2009).

At this juncture, the Court will not accept the submission (Dkt. 16) as
the amended complaint. The complaint (Dkt. 1) remains the operative
pleading.[1] Williams is directed to, within SIXTY DAYS of this Decision and
Order, submit a proposed amended pleading that complies with the

---

[1] Considering plaintiff's *pro se* status, the Clerk of the Court accepted the submission at
Docket Number 16 for filing.  The Court advises plaintiff, however, that the Court will
not review any document except to the extent that plaintiff specifically identifies and
references a properly filed motion or pleading.  The Court docket is not intended to serve
as a repository for plaintiff's records.

September 2025 Order and this Court's Local Rules.

## III.   CONCLUSION

**WHEREFORE,** it is hereby

**ORDERED** that Williams must comply with the directives set forth in this Decision and Order within **SIXTY** days; and it is further

**ORDERED**, that the clerk serve a copy of this Decision and Order on Williams at the address the Court has on file, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2008) (per curiam).

Dated: November 25, 2025.

_____
Hon. Mitchell J. Katz
U.S. Magistrate Judge

Williams v. Annucci, Not Reported in Fed. Supp. (2021)

2021 WL 4775970

2021 WL 4775970
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Wonder WILLIAMS, Plaintiff,

v.

Anthony ANNUCCI, Acting Commissioner, Department
of Corrections and Community Supervision, James
O'Gorman, Deputy Commissioner for Correctional
Facilities, John Colvin, Superintendent of Five
Points, Matthew Thoms, Superintendent of Mid-
State, Donald Venettozzi, Director of DOCCS Special
Housing and Inmate Disciplinary Program, John or
Jane Does 1–5, Members of the DOCCS SHMC at
Five Points, and John or Jane Does 6–10, Members
of the DOCCS SHMC at Mid-State, Defendants.[1]

[1]
While Plaintiff's original complaint asserted claims
against Defendants Joseph Bellnier and Albert
Prack, (*see* Dkt. No. 1), the First Amended
Complaint does not name either Bellnier or Prack
as a Defendant, (*see* Dkt. No. 24). The parties'
briefs likewise do not mention Defendants Bellnier
and Prack or include them in the case caption. (Dkt.
Nos. 28-1, 30, 33). Accordingly, the Court deems
Plaintiff's claims against Defendants Bellnier and
Prack to be waived. *See Elliot v. City of Hartford*,
649 F. App'x 31, 32 (2d Cir. 2016) (summary order)
(noting that it is "generally the case' that '[a]ll
causes of action alleged in an original complaint
which are not alleged in an amended complaint are
waived' " (quoting *Austin v. Ford Models, Inc.*,
149 F.3d 148, 155 (2d Cir. 1998), *abrogated on
other grounds by Swierkiewicz v. Sorema N.A.*, 534
U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002))).
The Clerk of the Court is respectfully directed to
terminate Defendants Bellnier and Prack on the
docket.

9:20-cv-1417 (BKS/TWD)
|
Signed 10/13/2021

**Attorneys and Law Firms**

For Plaintiff: James D. Arden, Julia L. Bensur, Laura Sorice,
Sidley Austin LLP, 787 Seventh Avenue, New York, NY
10019.

For Defendants Annucci, O'Gorman, Colvin, Thoms, and
Venettozzi: Letitia James, Attorney General of the State of
New York, Keith J. Starlin, Assistant Attorney General, of
Counsel, The Capitol, Albany, NY 12224.

**MEMORANDUM-DECISION AND ORDER**

Brenda K. Sannes, United States District Judge:

**I. INTRODUCTION**

 **\*1** Plaintiff Wonder Williams brings this action under
42 U.S.C. § 1983 against Defendants Anthony Annucci,
James O'Gorman, John Colvin, Matthew Thoms, Donald
Venettozzi, and John or Jane Does 1–10, alleging violations
of his Eighth and Fourteenth Amendment rights during
Plaintiff's incarceration in New York State Department
of Corrections and Community Supervision ("DOCCS")
correctional facilities. (Dkt. No. 24). Presently before the
Court is Defendants' motion, pursuant to Fed. R. Civ. P.
12(b)(1) and 12(b)(6), to dismiss Plaintiff's first amended
complaint ("FAC"). (Dkt. No. 28). Plaintiff has opposed the
motion, (Dkt. No. 30), and Defendants have responded, (Dkt.
No. 33). For the following reasons, Defendants' motion is
granted in part and denied in part.

**II. FACTS** [2]

[2]
The facts are drawn from the FAC. The
Court assumes the truth of, and draws
reasonable inferences from, the well-pleaded
factual allegations. *Faber v. Metro. Life Ins. Co.*,
648 F.3d 98, 104 (2d Cir. 2011).

Plaintiff was placed into DOCCS custody on March 6,
2010 for charges "stemming from his involvement in a
shooting and murder-for-hire plot." (Dkt. No. 24, ¶ 32).
Immediately upon entering DOCCS custody, Plaintiff was
placed in administrative segregation ("Ad Seg"), a form of
solitary confinement in the Special Housing Unit ("SHU"),
at Auburn Correctional Facility ("Auburn"). (*Id.* ¶ 33).
Plaintiff's placement on Ad Seg was recommended by S.B.
Duncan and Superintendent Graham at Auburn, because
they believed Plaintiff's placement in the general population

posed an "extreme risk to staff, inmates and the general public as well as the safety, security, and good order of the facility." (*Id.* ¶¶ 3, 33). In support of this determination the correctional staff cited Plaintiff's "use of telephones, U.S. Mail, Western Union, and jail visits while he was incarcerated on Riker's Island in 2007 to coordinate a failed murder-for-hire plot." (*Id.* ¶ 33). Plaintiff remained confined in Ad Seg at Auburn until July 6, 2015. (*Id.* ¶ 34). On July 6, 2015, Plaintiff moved to Ad Seg at Five Points Correctional Facility ("Five Points"). (*Id.*).

While in Ad Seg, Plaintiff was housed in a concrete cell "roughly the size of a standard parking space" for about 23 hours per day. (*Id.* ¶ 41). Plaintiff's cells were dirty, "with dirty water sometimes coming out of the sinks," and there was always a bright light kept on in or outside his cell. (*Id.*). He was allowed to shower three times per week, although he often had to shower in cold water or was not taken to the showers by corrections officers at his allotted time. (*Id.* ¶ 42). Plaintiff was allowed one hour of outdoor recreation each day. (*Id.* ¶ 43). Plaintiff did not have access to group meals, recreation, or education and had "minimal human interaction." (*Id.* ¶¶ 44–46).

New York regulations required DOCCS to periodically conduct reviews of Plaintiff's status on Ad Seg. (*Id.* ¶ 61; *see id.* (alleging that DOCCS was required to review his status every 30 days)); *see also* 7 N.Y.C.R.R. § 301.4(d) ("An inmate in administrative segregation status shall have such status reviewed every 60 days in accordance with the [specified] procedure."). [3] However, Plaintiff alleges that he never received any meaningful review of his Ad Seg status. (Dkt. No. 24, ¶ 62). The reviews conducted by DOCCS contained "substantially similar, sometimes even identical, language to prior reviews and used formulaic, boilerplate language" that did not consider any changed circumstances. (*Id.* ¶ 63). Plaintiff's reviews from May 2010 to November 2017 contained "the same recitation" of his criminal history, his status as a gang member, and details regarding his crime of conviction and stated "no other basis" for keeping Plaintiff in Ad Seg. (*Id.* ¶¶ 64–65). Plaintiff was not released from Ad Seg even when the reviews acknowledged his positive behavior. (*Id.* ¶¶ 67–72; *see, e.g., id.* ¶¶ 68 (February 12, 2014 review stating: "[Plaintiff's] current behavior is within acceptable and appropriate limits."), 69 (October 10, 2014 review noting that Plaintiff "has a clean disciplinary record"), 70 (September 8, 2015 review noting that "[w]hile in administrative segregation [Plaintiff] has exhibited respectful behavior")). Moreover, Plaintiff was not given any indication

as to how he could change his behavior to be taken off Ad Seg status. (*Id.* ¶ 63).

[3]     Section 301.4 was amended effective December 16, 2020. In this decision, the Court cites to the version of Section 301.4 that was in effect at the time Plaintiff was confined in Ad Seg and the step-down program.

**\*2** On December 1, 2017, Plaintiff was placed into the step-down program and housed in the SHU at Mid-State Correctional Facility ("Mid-State"). (*Id.* ¶¶ 35–36). The step-down program is designed to provide for a "phased transition for individuals in Ad Seg to return to the general population." (*Id.* ¶ 37). Plaintiff alleges, however, that the "conditions in the step-down program were equally as restrictive as in Ad Seg and constituted continued solitary confinement." (*Id.* ¶ 37). Plaintiff remained confined in his cell for 23 hours a day, and often was denied his one hour of daily recreation. (*Id.* ¶ 50). Although Plaintiff did receive an "additional four hours of inmate programming sessions each week," he was chained during the sessions. (*Id.*). Plaintiff "was not afforded any hearing or subsequent review of his segregated status" while in the step-down program and therefore "spent over a year in the step-down program without a meaningful review of his status, even though the conditions constituted continued solitary confinement." (*Id.* ¶¶ 35, 52, 74–75).

As a result of the time he spent in solitary confinement, Plaintiff suffered from medical and mental health conditions. (*Id.* ¶ 53). Plaintiff suffered from sleep disturbances, migraines, weight loss due to a thyroid condition, and back and neck pain. (*Id.* ¶¶ 55–58). He also suffered from "anxiety, depression, hopelessness, insomnia, and noticeable changes to his personality including increased introversion and difficulty focusing on daily tasks." (*Id.* ¶ 59). Plaintiff alleges that Defendants knew the deleterious effects of solitary confinement and that they were aware, by means of administrative grievances and written complaints, that Plaintiff was suffering "significant and lasting physical and mental injury as a result of his solitary confinement." (*Id.* ¶¶ 77–78).

On February 6, 2019, Plaintiff was moved to the general population. (*Id.* ¶ 38). On February 23, 2021, Plaintiff was released from DOCCS custody on parole. (*Id.* ¶ 31).

### III. STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.' " *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.' " *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

## IV. DISCUSSION

### A. STATUTE OF LIMITATIONS

Defendants argue that Plaintiff's claims regarding any acts or omissions prior to November 16, 2017 should be dismissed as barred by the statute of limitations. (Dkt. No. 28-1, at 9–13); *see DeSuze v. Ammon*, 990 F.3d 264, 271 (2d Cir. 2021) ("[Section 1983] claims ... are subject to a three-year statute of limitations."). Plaintiff responds that his Eighth Amendment claims are timely because the continuing violation doctrine applies and that his Fourteenth Amendment procedural due process claims are timely because the FAC alleges actions "that either apply to the entire duration" of Plaintiff's solitary confinement or which "expressly occurred after November 2017." (Dkt. No. 30, at 13–17).

The continuing violation doctrine applies to claims that are "composed of a series of separate acts that collectively constitute one unlawful [ ] practice." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (quoting *Washington v. County of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004)) (internal quotation marks omitted). Where applicable, the doctrine provides an "exception to the normal knew-or-should-have-known accrual date." *Id.* (quoting *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999)) (internal quotation marks omitted). The continuing violation doctrine applies to

"claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Lucente v. County of Suffolk*, 980 F.3d 284, 309 (2d Cir. 2020) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)). It does not, however, apply to "discrete unlawful acts," even if those discrete unlawful acts are part of "serial violations." *Id.*

**\*3** To assert a timely claim under the continuing violation doctrine, a plaintiff must allege "some non-time-barred acts" contributing to the alleged violation. *Id.* (quoting *Harris*, 186 F.3d at 250).[4] "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *See Connecticut Gen. Life Ins. Co. v. BioHealth Labs., Inc.*, 988 F.3d 127, 131–32 (2d Cir. 2021) (quoting *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015)). In the context of an alleged continuing violation, if a plaintiff can demonstrate "some [ ] act that did occur within the statute of limitations, so that his claim would not be time-barred," *Harris*, 186 F.3d at 250, "the mere allegation of the existence of such a [continuing] policy would be sufficient to withstand a challenge for failure to state a claim," *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997).

4  Moreover, where a plaintiff brings a claim against multiple defendants, he must allege no time-barred act as to *each* defendant. *See Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) ("The continuing violation doctrine does not apply to the claim against [the individual defendant] because there is no indication that [the plaintiff] is able to allege acts involving [that defendant] that fall within the three-year statutory period."); *Lucente*, 980 F.3d at 310 (holding that Section 1983 claims could proceed against certain individual defendants "as long as each plaintiff alleged an unconstitutional act committed by each particular defendant that falls within the three-year statutory period").

The Second Circuit has applied the continuing violation doctrine to Eighth Amendment deliberate indifference claims. *See, e.g.*, *Gonzalez*, 802 F.3d at 224 (applying the doctrine to an Eighth Amendment claim for cruel and unusual punishment); *Shomo*, 579 F.3d at 182 (holding that the doctrine can apply to an Eighth Amendment claim for deliberate indifference to serious medical needs); *Smith v.*

*Annucci*, No. 18-cv-06261, 2019 WL 539935, at *7, 2019 U.S. Dist. LEXIS 21888 (W.D.N.Y. Feb. 11, 2019) (applying the doctrine to an Eighth Amendment claim challenging long-term confinement in SHU). Accordingly, Plaintiff's Eighth Amendment claims are subject to the continuing violation doctrine, and at what point his claims accrued "is a question of fact." *Gonzalez*, 802 F.3d at 224. Moreover, even where a claim subject to the continuing violation doctrine accrues before the statute of limitations expires, it will still be timely "as long as the violation of rights continued past" the expiration of the limitations period—i.e., as long as the plaintiff alleges a non-time-barred act contributing to the alleged violation. *Id.* (citing *Morgan*, 536 U.S. at 117, 122 S.Ct. 2061); *Lucente*, 980 F.3d at 309).

Here, Plaintiff alleges that he was held in solitary confinement from March 6, 2010 to February 6, 2019. (Dkt. No. 24, ¶¶ 25, 32–38). Therefore, regardless of when Plaintiff's Eighth Amendment claim challenging his long-term confinement in isolation accrued, Plaintiff has alleged that the violation of his rights continued until February 6, 2019, less than two years before he commenced this action on November 16, 2020. (*See* Dkt. No. 1). The Court therefore cannot conclude from the face of the FAC that Plaintiff's Eighth Amendment claims are barred as a matter of law. *See Cardwell v. Davis Polk & Wardwell LLP*, No. 19-cv-10256, 2020 WL 6274826, at *40, 2020 U.S. Dist. LEXIS 198655 (S.D.N.Y. Oct. 24, 2020) ("The Court declines to parse how the continuing violation doctrine may apply to [the plaintiff's] claims at the motion to dismiss stage.") (quotation marks omitted).

 *4 On the other hand, the continuing violation doctrine is not applicable to claims asserting a violation of the plaintiff's procedural due process rights. *See, e.g., Gonzalez*, 802 F.3d at 223 (noting the "inapplicability" of the doctrine to procedural due process claims); *Smith*, 2019 WL 539935, at *5, 2019 U.S. Dist. LEXIS 21888 (holding the doctrine did not apply to the plaintiff's claims for procedural due process violations and collecting cases). Even though successive denials of a plaintiff's procedural due process rights "may combine to form a 'serial violation,' " each denial is a discrete act which triggers the accrual of a discrete claim. *Gonzalez*, 802 F.3d at 223. Accordingly, Plaintiff has a discrete claim for each alleged denial of "meaningful and timely periodic review" of his detention in Ad Seg or of "meaningful notice of what he must do to earn release," (Dkt. No. 24, ¶ 114), and each of those claims is subject to a three-year statute of limitations. Therefore, Plaintiff's procedural due process claim would be

able to proceed as to any reviews—or lack thereof—occurring within three years of the filing of his complaint.

However, dismissal under Federal Rule of Civil Procedure 12(b)(6) on the ground of a statutory bar, such as lack of timeliness, is appropriate only when "it is clear from the face of the complaint" that "the plaintiff's claims are barred as a matter of law." *Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015) (quoting *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008)). Here, Plaintiff alleges that he exhausted his administrative remedies by appealing the finding of his initial Ad Seg hearing, appealing his Ad Seg reviews, and submitting various grievances to the Inmate Grievance Resolution Committee. (Dkt. No. 24, ¶¶ 82–86). The Second Circuit has held that "the applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process." *Gonzalez v. Hasty*, 651 F.3d 318, 323–24 (2d Cir. 2011). The parties have not addressed how long it took Plaintiff to complete the exhaustion process regarding his procedural due process claims and for how long the statute of limitations applicable to his claims should be tolled. Accordingly, the Court cannot determine from the face of the FAC that any of Plaintiff's claims are "barred as a matter of law." *Sewell*, 795 F.3d at 339. [5] Accordingly, Defendants' motion to dismiss on statute of limitations grounds is denied.

[5]    Because factual issues regarding the length of time for which the statute of limitations should be tolled would remain in any case, the Court does not consider the records of Plaintiff's Ad Seg reviews submitted by Defendants with their motion to dismiss, (*see* Dkt. No. 28-3), and confines its consideration to the FAC.

### B. PERSONAL INVOLVEMENT
Defendants argue that Plaintiff's claims must be dismissed because the FAC fails to allege the personal involvement of any Defendant in the alleged violation of his constitutional rights. (Dkt. No. 28-1, at 13–25). Plaintiff responds that the FAC sufficiently alleges the personal involvement of each Defendant by alleging each Defendant's knowledge of ongoing constitutional violations in solitary confinement. (Dkt. No. 30, at 18–26).

It is well-settled that, to establish a defendant's individual liability in a suit brought under Section 1983, a plaintiff must show "the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (citations omitted). A

Williams v. Annucci, Not Reported in Fed. Supp. (2021)

2021 WL 4775970

plaintiff must "allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). The Second Circuit recently held that the *Colon* test for showing the personal involvement of supervisory officials was abrogated by the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020); *see also Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Specifically, the Second Circuit held that "there is no special rule for supervisory liability" and that "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' " *Tangreti*, 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676, 129 S.Ct. 1937). [6] Thus, the "factors" necessary to plead and establish a Section 1983 violation " 'will vary with the constitutional provision at issue' because the elements of different constitutional violations vary." *Id.* (quoting *Iqbal*, 556 U.S. at 676, 129 S.Ct. 1937). To state an Eighth Amendment claim, which requires a *mens rea* of deliberate indifference, a plaintiff must allege that the supervisor had "subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it." *See id.* at 616 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). To state a Fourteenth Amendment claim for violation of procedural due process rights, a plaintiff must allege a protected liberty or property interest and that the plaintiff was deprived of that interest without sufficient process. *Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989)).

[6]  Plaintiff is incorrect that *Tangreti* is "inapposite" because there "the court set the standard for liability under Section 1983 at the *summary judgment* stage, not the motion to dismiss stage." (*See* Dkt. No. 30, at 18). *Tangreti* makes clear that a plaintiff "must *plead* and prove" that each individual defendant violated the Constitution. 983 F.3d at 618 (emphasis added).

### 1. Acting Commissioner Annucci

**\*5** The FAC alleges that Annucci, as Acting Commissioner of DOCCS, "is responsible for the overall management and operation of DOCCS" and that his "responsibilities include reviewing and approving the transfer of prisoners to DOCCS Special Housing Units ('SHU'), including administrative Segregation ('Ad Seg') and the step-down program, under a Central Office placement." (Dkt. No. 24, at ¶ 12). The FAC further alleges that, "[u]pon information and belief, ANNUCCI approved [Plaintiff's] continued solitary confinement for a period of time relevant to this action." (*Id.*). Plaintiff also alleges that Annucci "has final policy-making and supervisory authority within DOCCS and is personally involved in authorizing and maintaining the unconstitutional policies and practices" challenged by Plaintiff, and that he "is well aware" of the "unconstitutional risk of harm to inmates" resulting from lengthy periods of solitary confinement. (*Id.* ¶¶ 12–13).

The Court finds that the FAC does not plausibly allege constitutional claims under Section 1983 against Annucci. Although the FAC alleges that Annucci approved Plaintiff's solitary confinement at some point, it does not plausibly allege facts indicating that Annucci had "subjective knowledge of a substantial risk of serious harm" to Plaintiff in particular and disregarded that risk. *See Tangreti*, 983 F.3d at 616. Moreover, given the abrogation of the *Colon* factors previously used to establish supervisory liability, the allegations regarding Annucci's policymaking authority and general awareness of unconstitutional practices are insufficient to adequately plead his subjective knowledge as to Plaintiff's situation specifically. To the extent that Plaintiff asks the Court to infer that Annucci was aware of and personally involved in Plaintiff's injuries based simply on his position as Acting Commissioner, that is "precisely the kind of inference about supervisory officials held impermissible by the Second Circuit in *Tangreti*." *Zielinski v. Annucci*, No. 17-cv-1042, ––– F. Supp. 3d. ––––, 2021 WL 2744684, at *8, 2021 U.S. Dist. LEXIS 124088 (N.D.N.Y. July 2, 2021).

Plaintiff also alleges that "Defendants" deprived him of "a protected liberty interest in avoiding long-term solitary confinement," "meaningful and timely periodic review of his detention in Ad Seg, as well as meaningful notice of what he must do to earn release," in violation of the Fourteenth Amendment's Due Process Clause. (Dkt. No. 24, ¶ 114). However, the FAC contains no allegations regarding Annucci's individual actions with respect to Plaintiff and therefore does not plausibly allege his personal involvement in the alleged violation of Plaintiff's procedural due process rights. *Cf. Jackson v. Annucci*, No. 20-cv-02008, 2021 WL 2581340, at *5, 2021 U.S. Dist. LEXIS 117276 (S.D.N.Y. June 23, 2021) (finding no personal involvement where the allegations did not "connect Annucci to the specific constitutional violations" alleged).

Case 9:25-cv-00903-GTS-MJK    Document 17    Filed 11/26/25    Page 11 of 40
Williams v. Annucci, Not Reported in Fed. Supp. (2021)
2021 WL 4775970

Accordingly, Plaintiff's Section 1983 claims against Annucci are dismissed.

### 2. Deputy Commissioner O'Gorman

The FAC alleges that O'Gorman, as Deputy Commissioner of DOCCS, had "policy-making and supervisory authority within DOCCS" and was "personally involved in authorizing and maintaining the unconstitutional policies and customs" at issue. (Dkt. No. 24, ¶ 14). The FAC further alleges that, "[u]pon information and belief," O'Gorman "instituted policies that facilitated [Plaintiff's] placement in Ad Seg, including the lack of meaningful review of his status." (*Id.*). Plaintiff alleges that O'Gorman was "responsible for the overall management and operation of the correctional institutions within DOCCS" and that his "responsibilities included reviewing and approving the transfer and assignment of prisoners to SHU, including Ad Seg and the step-down program." (*Id.* ¶ 15). Plaintiff alleges that O'Gorman was the "final arbiter" of his continued placement in solitary confinement, (*id.* (citing 7 N.Y.C.R.R. § 301.4(d)(3))), and that, upon information and belief, O'Gorman "approved [Plaintiff's] continued confinement in solitary confinement ... for a period of time relevant to this action." (*Id.*). O'Gorman's approval "included signing each review despite lacking any justification for continuing" Plaintiff's detention or allowing Plaintiff's continued placement in solitary without meaningful review. (*Id.*). The FAC further alleges that O'Gorman, "on at least one occasion since November 2017" and "as mandated by New York regulations," "reviewed, approved, and signed off on the disciplinary review boards' [7] continued decisions to keep [Plaintiff] confined in solitary confinement, in knowing disregard of the lack of penological justification for such confinement." (*Id.* ¶ 16). Finally, Plaintiff alleges that O'Gorman, like Annucci, "has been on notice of the constitutional violations suffered by inmates" subjected to prolonged solitary confinement. (*Id.* ¶ 17).

[7]    This case does not implicate disciplinary hearings or the disciplinary process. The FAC does not explain what a "disciplinary review board" is, or its relevance here.

**\*6**    The Court finds that the FAC plausibly alleges O'Gorman's personal involvement in the alleged violations of Plaintiff's Eighth and Fourteenth Amendment rights. Contrary to Defendants' argument that the FAC is "bereft

of factual detail" to support the allegation that O'Gorman was personally involved, (*see* Dkt. No. 28-1, at 18), the FAC specifically alleges that O'Gorman was the "final arbiter" of Plaintiff's continued placement in solitary confinement and that he therefore approved Plaintiff's continued placement "in solitary confinement, including administrative segregation and the step-down program," (Dkt. No. 24, ¶ 15); *see also* 7 N.Y.C.R.R. § 301.4(d)(3) (providing that, where an inmate in Ad Seg "is to receive central office review," the deputy commissioner, "[u]pon receipt of the materials from the central office committee ... shall make the determination to retain the inmate in or release the inmate from administrative segregation"). From the allegations that O'Gorman approved Plaintiff's continued placement in solitary confinement, it is reasonable to infer that O'Gorman was subjectively aware of the risk that Plaintiff's constitutional rights were being violated by prolonged confinement in isolation, and that he disregarded that risk by approving his continued placement. *See Farmer*, 511 U.S. at 837, 114 S.Ct. 1970; *see also H'Shaka v. O'Gorman*, 444 F. Supp. 3d 355, 376 (N.D.N.Y. 2020) (finding personal involvement of DOCCS defendants where they "were directly involved in the decision to keep Plaintiff in Ad Seg"). [8] Moreover, these allegations "connect" O'Gorman to the review of Plaintiff's continued status in solitary and the alleged violation of Plaintiff's procedural due process rights. *Cf. Jackson*, 2021 WL 2581340, at \*5, 2021 U.S. Dist. LEXIS 117276.

[8]    Defendants argue that Plaintiff's original complaint alleged that Joseph Bellnier occupied the position of Deputy Commissioner until his retirement in September 2017, and that O'Gorman therefore did not become Deputy Commissioner until after that time. (Dkt. No. 28-1, at 19). However, "[i]t is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (citations omitted). Accordingly, the Court does not credit this argument and confines its analysis to the allegations of the FAC.

Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's Section 1983 claims against O'Gorman.

### 3. Superintendents Colvin and Thoms

Case 9:25-cv-00903-GTS-MJK    Document 17    Filed 11/26/25    Page 12 of 40

Williams v. Annucci, Not Reported in Fed. Supp. (2021)

2021 WL 4775970

The FAC alleges that Colvin, the Superintendent at Five Points, and Thoms, the Superintendent at Mid-State, "are responsible for the care, custody, and safety of all prisoners under their immediate jurisdiction." (Dkt. No. 24, ¶ 18). The FAC further alleges that Colvin and Thoms "managed DOCCS facilities where [Plaintiff] was housed in SHU" and had "policy-making and supervisory authority over all operations" at their respective facilities. (*Id.* ¶ 19). The FAC alleges that the DOCCS Superintendents "were personally involved in the decision to confine inmates, including [Plaintiff], to Ad Seg and SHU." (*Id.*). More specifically, Plaintiff alleges: "Under DOCCS regulations, the Superintendent of each facility is required to make an independent determination as to whether an inmate remains in solitary confinement or is released from Ad Seg or the step-down program." (*Id.* (citing 7 N.Y.C.R.R. § 301.4(d)(2) (providing that "the superintendent shall, except where the superintendent or designee refers the matter to central office," "make a determination to retain the inmate in or release the inmate from administrative segregation"))). Plaintiff alleges that Colvin and Thoms "denied [Plaintiff] his right to meaningful review of his Ad Seg status, approved the disciplinary review boards' [9] continued decisions to keep [Plaintiff] in solitary confinement, and failed to provide [Plaintiff] with adequate living conditions." (*Id.*). The FAC alleges that Colvin and Thoms "signed off on the perfunctory Ad Seg reviews" "in knowing disregard of their lack of justification." (*Id.* ¶ 20). With respect to SHU, the FAC alleges that DOCCS utilized a committee at each facility to make recommendations to the Superintendent regarding whether "a SHU prisoner should be granted a time-cut to his SHU sentence under the Superintendent's discretionary authority." (*Id.* ¶ 23).

[9]    *See supra* Section IV.B.2., n.7.

At this stage, and for similar reasons as discussed above regarding O'Gorman, the Court finds that the FAC plausibly alleges Colvin and Thoms's personal involvement in the alleged violations of Plaintiff's Eighth and Fourteenth Amendment rights. While the Court agrees with Defendants that this case does not implicate the Superintendents' authority to review disciplinary hearings imposing punishment and that Section 301.4 does not on its face address a Superintendent's responsibilities in connection with the step-down program, (*see* Dkt. No. 28-1, at 20–23), the FAC plausibly alleges the Superintendents' personal involvement in the decision to continue an inmate's placement in Ad Seg and SHU. With respect to Ad Seg, Plaintiff

has alleged that Colvin and Thoms were required to make independent determinations regarding his continued status on Ad Seg and that they signed off on the reviews which prolonged his solitary confinement. (Dkt. No. 24, ¶¶ 19–20). It is therefore reasonable to infer that, because they were involved in decisions approving Plaintiff's continued solitary confinement, Colvin and Thoms were subjectively aware of and disregarded the risk that Plaintiff's constitutional rights were being violated. *See Farmer*, 511 U.S. at 837, 114 S.Ct. 1970. Moreover, by alleging that Colvin and Thoms "signed off" on "perfunctory" reviews that deprived Plaintiff of his right to meaningful review of his status in solitary confinement and, with respect to SHU, had discretionary authority to make time-cuts, the FAC plausibly alleges the Superintendents' personal involvement in the alleged denial of Plaintiff's procedural due process rights. *Cf. Jackson*, 2021 WL 2581340, at *5, 2021 U.S. Dist. LEXIS 117276.

### 4. Director Venettozzi

**\*7**   The FAC alleges that Venettozzi's authority as Special Housing Unit Director includes "reviewing, affirming, modifying, or reversing dispositions imposed at Tier III Hearings." (Dkt. No. 24, ¶ 21). The FAC also alleges that, "[u]pon information and belief," Venettozzi denied Plaintiff meaningful review of his status in solitary confinement "on at least one occasion since November 2017 by reviewing, approving, and signing off on the disciplinary review boards' repeated decisions" to keep him there. (*Id.* ¶ 22).

The Court finds that the FAC does not plausibly allege Venettozzi's personal involvement in the alleged violations of Plaintiff's constitutional rights. Although Plaintiff suggests in his opposition that Venettozzi's authority over dispositions imposed at Tier III Hearings extends to the hearing that "resulted in [Plaintiff's] initial placement in Ad Seg," (Dkt. No. 30, at 23), this allegation is not contained in the FAC. *See Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) ("Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself."). Indeed, the FAC does not allege that Venettozzi was in fact involved in Plaintiff's initial placement in solitary, or that the initial placement in Ad Seg itself violated Plaintiff's constitutional rights. The only other allegation regarding Venettozzi is a conclusory statement that Venettozzi at some point reviewed, approved, and signed off on the "disciplinary review boards' repeated decisions to keep [Plaintiff] in solitary confinement." (*Id.* ¶ 22). [10] This

Case 9:25-cv-00903-GTS-MJK    Document 17    Filed 11/26/25    Page 13 of 40

allegation is insufficient to plausibly allege facts indicating that Venettozzi had "subjective knowledge of a substantial risk of serious harm" to Plaintiff specifically and disregarded that risk. *See Tangreti*, 983 F.3d at 616. The FAC also does not plausibly allege Venettozzi's personal involvement in the alleged violation of Plaintiff's procedural due process rights. *Cf. Abdul-Halim v. Bruyere*, No. 19-cv-740, 2021 WL 3783087, at *3, 2021 U.S. Dist. LEXIS 161441 (N.D.N.Y. Aug. 26, 2021) (noting that affirming the outcome of a prison hearing is not sufficient to establish personal involvement).

10      *See supra* Section IV.B.2., n.7.

Accordingly, Plaintiff's Section 1983 claims against Venettozzi are dismissed.

## C. PROCEDURAL DUE PROCESS CLAIMS

Defendant argues that Plaintiff's procedural due process claim should be dismissed because Plaintiff did not have a liberty interest in not being placed in the step-down program and therefore was not entitled to any review of his placement there. (Dkt. No. 28-1, at 25–26). [11] Plaintiff responds that he has a liberty interest in not being subjected to extended time in solitary confinement, which includes the step-down program, and that his time in the step-down program therefore triggered procedural due process protections. (Dkt. No. 30, at 28–31).

11      Defendants' argument does not address any procedural due process claims accruing before Plaintiff's move to the step-down program on December 1, 2017, on the view that those claims are time-barred. However, for the reasons discussed above, *supra* Section IV.A, Defendants' motion to dismiss any claims on statute of limitations grounds is denied.

To state a claim under Section 1983 for the denial of procedural due process, a plaintiff must allege both the existence of a protected liberty or property interest, and that he or she was deprived of that interest without being afforded sufficient process. *Shakur*, 391 F.3d at 118 (citing *Thompson*, 490 U.S. at 460, 109 S.Ct. 1904). " '[A] prisoner's restricted confinement within a prison does not give rise to a liberty interest, warranting procedural due process protection, unless the conditions and duration 'impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Sealey v. Giltner*, 197 F.3d 578, 583 (2d Cir. 1999) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).

Confinement to segregated housing may trigger procedural due process protections, depending on the length, frequency, and conditions of the confinement. *See Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000) (noting that the "duration and the frequency of such deprivations are highly relevant to whether the conditions of a plaintiff's confinement should be considered atypical" (citations omitted)); *see also Williams v. Chuttey*, No. 15-cv-1278, 2017 WL 9673722, at *4, 2017 U.S. Dist. LEXIS 144253 (N.D.N.Y. Sept. 5, 2017) (noting that there is no "bright line rule that a certain period of confinement in keeplock or a segregated housing unit automatically gives rise to due process protection"), *report-recommendation adopted by* 2018 WL 1413049, 2018 U.S. Dist. LEXIS 45931 (N.D.N.Y. Mar. 21, 2018), *aff'd*, 767 F. App'x 105 (2d Cir. 2019). A sufficiently long confinement, even under normal SHU conditions, is "a sufficient departure from the ordinary incidents of prison life to require procedural due process protections under *Sandin*." *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) (holding that procedural due process protections were required for a confinement in SHU of 305 days).

**\*8** At this stage, the Court finds that Plaintiff has adequately alleged that he had a liberty interest in avoiding his restricted confinement, whether in Ad Seg or the step-down program, triggering procedural due process protections. Plaintiff alleges that he was in solitary confinement from March 6, 2020 until February 6, 2019, a total of almost nine years. (Dkt. No. 24, ¶¶ 25, 32–38). Plaintiff was placed into the step-down program on December 1, 2017 and remained there for approximately 432 days before being released into the general population. (*Id.*). Moreover, the FAC alleges that "conditions in the step-down program were equally as restrictive as in Ad Seg and constituted continued solitary confinement." (*Id.* ¶¶ 47–48). Plaintiff remained housed in SHU while in the step-down program and was confined to his cell for 23 hours a day. (*Id.* ¶¶ 49–50). Plaintiff alleges that the "only minor difference" between Ad Seg and the step-down program was that he received "an additional four hours of inmate programming sessions each week," although he was "chained" during the sessions. (*Id.* ¶ 50). While an inmate may not have a liberty interest in participating in the step-down program to facilitate early release into the general population, *Animashaun v. Fischer*, No. 19-cv-820, 2020 WL 374578, at *17, 2020 U.S. Dist. LEXIS 11093 (N.D.N.Y. Jan. 23, 2020), Plaintiff's allegations regarding his confinement in SHU while in the step-down program, for approximately 432 days, plausibly allege a "sufficient departure from the ordinary incidents of prison life to require

2021 WL 4775970

procedural due process protections," *Howard*, 215 F.3d at 231 (holding procedural due process protections were triggered by a typical SHU confinement lasting 305 days).

The Court also finds that Plaintiff plausibly alleged that he was deprived of his liberty interest in avoiding long periods of solitary confinement without sufficient due process. Defendants cite to the fact that there are no allegations about the step-down program in the due process "lack of meaningful review" cause of action. (Dkt. No. 28-1, at 26). But all of the earlier allegations in the FAC were expressly incorporated into the due process cause of action, (Dkt. No. 24, ¶ 113), and this included Plaintiff's allegations that solitary confinement is imposed in the step-down program "with no requirement of reviews of any sort" and that he "spent over a year in the step-down program without a meaningful review of his status." (Dkt. No. 24, ¶¶ 51–52; *see also id.* ¶ 74 ("[Plaintiff] received no reviews at all during his time in the step-down program.")). [12] Defendants have not addressed what process was due or how due process was satisfied with respect to Plaintiff's confinement in the step-down program. Accordingly, without deciding what process Plaintiff was entitled to while in the step-down program, the Court finds that the allegations that he received *no* reviews of his status for more than one year are sufficient to state a claim. *See Proctor v. LeClaire*, 846 F.3d 597, 609 (2d Cir. 2017) ("It is well established that whenever process is constitutionally due, no matter the context, 'it must be granted at a meaningful time and in a meaningful manner.' " (citations omitted) (internal brackets and punctuation omitted)).

[12]     In his opposition to Defendants' motion to dismiss, Plaintiff relies on 7 N.Y.C.R.R. § 316.3 to suggest what process he was due while in the step-down program. (Dkt. No. 30, at 30 (citing 7 N.Y.C.R.R. § 316.3(c) (providing that, upon an inmate's admission to a step-down unit, "a program management team shall" "develop an individual rehabilitation plan" for the inmate and "conduct periodic reviews of the incarcerated individuals"))). However, Section 316.3 is a new section of the regulations that was first effective December 16, 2020, after Plaintiff was moved out of the step-down program. Plaintiff has not pointed to regulations pertaining to the step-down program that were in effect during the relevant time period.

Accordingly, Defendants' motion to dismiss Plaintiff's procedural due process claims is denied.

### D. QUALIFIED IMMUNITY

Defendants argue that they are entitled to qualified immunity on Plaintiff's Section 1983 claims because there is no controlling caselaw showing that Plaintiff had a "well-established right to avoid transfer to the Step-Down program upon release from Ad Seg" and no "rule" requiring Defendants to review Plaintiff's status in the step-down program. (Dkt. No. 28-1, at 27). Plaintiff responds that Defendants violated his clearly established Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment, to be free from confinement that serves no legitimate penological purpose, and to have meaningful review of his detention in Ad Seg and the step-down program. (Dkt. No. 30, at 26–28).

**\*9** "Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Doe*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)); *see also generally Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity is an affirmative defense on which defendants bear the burden of proof. *Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013). For a qualified immunity defense asserted in a motion to dismiss to be successful, the "facts supporting the defense [must] appear on the face of the complaint," and the plaintiff "is entitled to all reasonable inferences from the facts alleged ... that defeat the immunity defense." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

The Court finds that Defendants are not entitled to qualified immunity at this early stage. Contrary to Defendants' argument, the FAC does not appear to allege that Defendants violated Plaintiff's rights by placing him in the step-down program instead of the general population upon his release from Ad Seg. Rather, Plaintiff challenges the total amount of time he spent in solitary confinement—whether in Ad Seg or the step-down program—as well as the lack of meaningful and timely reviews of his status in solitary confinement. (*E.g.*, Dkt. No. 24, ¶¶ 2–3, 39, 51–52). However, prisoners have a clearly established right to be free from cruel and unusual punishment, which includes extremely long confinements in isolation and punishments or conditions which have no legitimate penological justification. *See, e.g., Gonzalez*, 802 F.3d at 224 (noting that "whether incarceration in the SHU

Case 9:25-cv-00903-GTS-MJK    Document 17    Filed 11/26/25    Page 15 of 40

Williams v. Annucci, Not Reported in Fed. Supp. (2021)

2021 WL 4775970

violates the Eighth Amendment" "depends on the duration and conditions of the confinement"); *Hope v. Pelzer*, 536 U.S. 730, 737, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (holding that among the "unnecessary and wanton inflictions of pain" forbidden by the Eighth Amendment are "those that are totally without penological justification" (quotation marks and citations omitted)). Moreover, it is well-settled in this Circuit that a "period of confinement under typical SHU conditions lasting longer than 305 days" triggers a protected liberty interest and procedural due process protections. *Gonzalez*, 802 F.3d at 223. The absence of a DOCCS "rule" requiring Defendants to review Plaintiff's status in the step-down program is not sufficient to establish qualified immunity at the motion to dismiss stage.

Accordingly, the Court denies Defendants' motion to qualified immunity without prejudice to raising the defense at a later time.

### E. ELEVENTH AMENDMENT

Finally, Defendants argue that the Eleventh Amendment requires dismissal of Plaintiff's claims "[t]o the extent Plaintiff seeks damages against Defendants in their official capacities." (Dkt. No. 28-1, at 27). Plaintiff responds that he does not seek damages against Defendants in their official capacities, "but rather only seeks declaratory relief" against the DOCCS Defendants. (Dkt. No. 30, at 28).

The Eleventh Amendment bars suits against state officials in their official capacities unless Congress has abrogated the state's sovereign immunity, the state has consented to suit, or the plaintiff is "seeking injunctive relief against a state official for an ongoing violation of law or the Constitution." *N.Y. State Corr. Officers & Police Benevolent Ass'n, Inc. v. New York*, 911 F. Supp. 2d 111, 124–25 (N.D.N.Y. 2012) (citing *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). Declaratory judgments are a form of injunctive relief that may be allowed under the third exception, so long as it is prospective. *Id.* at 129 (citations omitted). Declaratory relief against an official sued in his official capacity is not

permitted, however, "when it would serve to declare only past actions in violation of federal law." *Id.*; *see also Finch v. N.Y. State Office of Children & Family Servs.*, 499 F. Supp. 2d 521, 538 n.138 (S.D.N.Y. 2007) ("[T]he Eleventh Amendment 'does not permit judgments against state officers declaring that they violated federal law in the past.' " (quoting *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993))).

**\*10** Here, Plaintiff alleges that he was released into the general population of Mid-State on February 6, 2019 and released from DOCCS custody on February 23, 2021. (Dkt. No. 24, ¶¶ 31, 38). He does not allege that any of the Defendants continues to violate his federal rights or will do so in the future. Moreover, Plaintiff seeks retrospective declaratory relief in the FAC. (*Id.* at 31 (asking the Court to "[d]eclare that the Defendants' acts and omissions violated [Plaintiff's] constitutional rights")). Accordingly, because Plaintiff does not seek prospective declaratory relief, the Court grants Defendants' motion to dismiss Plaintiff's claims brought against Defendants in their official capacities.

### V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's claims against Defendants Annucci and Venettozzi are **DISMISSED**; and it is further

**ORDERED** that Plaintiff's claims against Defendants in their official capacities are **DISMISSED**; and it is further

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 28) is otherwise **DENIED**.

**IT IS SO ORDERED.**

### All Citations

Not Reported in Fed. Supp., 2021 WL 4775970

---

**End of Document**                      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 9:20-CV-01417**<br>Williams v. Annucci et al | — | N.D.N.Y. | Nov. 16, 2020 | Docket |

**History (3)**

**Direct History (1)**

1. Williams v. Annucci
   2021 WL 4775970 , N.D.N.Y. , Oct. 13, 2021

**Related References (2)**

2. Williams v. O'Gorman
   2024 WL 2208648 , N.D.N.Y. , May 16, 2024

3. Williams v. O'Gorman
   2024 WL 4120440 , N.D.N.Y. , Sep. 09, 2024

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 1029614
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Tyrone WALKER, Plaintiff,

v.

Brian FISCHER, Commissioner of State of New
York Department of Correctional Services; Robert
Schattinger, Director of Nutritional Services, State
of New York Department of Correctional Services;
Dale Artus, Superintendent, Clinton Correctional
Facility; thomas lavalley, First Deputy Superintendent,
Clinton Correctional Facility; Max Patnode, Deputy
Superintendent of Programs, Clinton Correctional
Facility; Rabbi Alec H. Friedmann, Jewish Chaplain,
Clinton Correctional Facility; David Lucia, Lieutenant,
Clinton Correctional Facility; V. Johnson, Facility
Health Services Director, Clinton Correctional
Facility; Kevin Hicks, Sergeant, Clinton Correctional
Facility; R. Trudeau, Correctional Officer, Clinton
Correctional Facility; and Imam Assallami Fadl,
Chaplain, Clinton Correctional Facility, Defendants.

No. 9:10–cv–01431 (MAD/DEP).
|
March 26, 2012.

**Attorneys and Law Firms**

Tyrone Walker, Dannemora, NY, pro se.

Office of the New York State Attorney General, Megan M.
Brown, AAG, of Counsel, Albany, NY, for Defendants.

**MEMORANDUM–DECISION AND ORDER**

MAE A. D'AGOSTINO, District Judge.

**I. INTRODUCTION**

**\*1** Plaintiff filed a *pro se* civil rights complaint against
a broad array of corrections employees, alleging several
deprivations of his civil rights. In his complaint, Plaintiff
sets forth several claims alleging violations of his rights
under the Religious Land Use and Institutionalized Persons
Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc–1(a), as well

as the First, Eighth, and Fourteenth Amendments to the
United States Constitution. In a February 27, 2012 Report,
Recommendation and Order, Magistrate Judge Peebles
recommended that the Court grant in part and deny in part
Defendants' motion to dismiss and deny Plaintiff's motion
for leave to amend his complaint and join additional parties
without prejudice to renewal.

Currently before the Court are Plaintiff's objections to
Magistrate Judge Peebles' February 27, 2012 Report,
Recommendation and Order and his renewed motion to
amend and supplement his complaint.

**II. BACKGROUND**

**A. Plaintiff's complaint**
Plaintiff is a prison inmate entrusted to the care and custody
of the New York State Department of Corrections and
Community Supervision ("DOCCS"). *See* Dkt. No. 1 at ¶
4. At all times relevant to his claim, Plaintiff was confined
in a special housing unit ("SHU") cell within the Clinton
Correctional Facility ("Clinton"), located in Dannemora, New
York. *See id.* Plaintiff is a Muslim by faith, and suffers from
a gastrointestinal condition that causes him to experience
chronic constipation and severe internal hemorrhoids. *See
id.* at ¶ 18 and Exhibit "5." For these conditions, Plaintiff
receives hemorrhoidal cream periodically, is provided with
Metamucil, and has been placed on a Controlled "A" High
Fiber Diet. *See id.* at ¶ 18 and Exhibit "1."

Plaintiff's complaint, in large part, centers upon the alleged
failure of prison officials to meet his health and religious
dietary needs. Believing that the prescribed High Fiber Diet
did not provide him with adequate fiber, Plaintiff filed
Grievance No. CL–57436–08 on July 14, 2008, requesting
a Kosher or a Muslim Halal Diet, which, he claims, would
satisfy both his medical needs and religious beliefs. *See
id.* at ¶ 19. In response to his grievance, Plaintiff was
advised that the High Fiber Diet was created by the DOCCS
Division of Nutritional Services in accordance with DOCCS'
policies and complies with all state-wide mandates. *See id.*
As such, his grievance was denied. *See id.* and Exhibit "2."
Plaintiff appealed the denial of his grievance, and his appeals
were rejected by both the facility superintendent and by the
DOCCS Central Office Review Committee ("CORC"). *See
id.* at ¶ 19.

On July 29, 2008, Plaintiff received a communication from Brian LeCuyer, a Nurse Administrator at Clinton, advising him that if he was not satisfied with his existing diet, he should complete a refusal form requesting that he be removed from the diet and that he could speak with the appropriate religious official regarding his desire for a Kosher or Muslim Halal Diet. *See id.* at ¶ 20 and Exhibit "3." On July 30, 2008, Plaintiff wrote to the Assistant Director of Nutritional Services, reiterating his challenge to the adequacy of the High Fiber Diet, as set forth in Grievance No. CL–57436–08. *See id.* at ¶ 25 and Exhibit "4." Plaintiff did not receive a response to this communication. *See id.*

**\*2** On August 1, 2008, Plaintiff made a written request to Defendant Rabbi Alec H. Friedmann, the Jewish Chaplain at Clinton, requesting that he be placed on a Cold Alternative Diet, or Kosher Diet, to address his health issues, explaining that the diet would be consistent with his religious beliefs. *See id.* at ¶ 22 and Exhibit "5." On August 6, 2008, Defendant Friedmann wrote back to Plaintiff, denying his request and recommending that he instead accept a Religious Alternative Meal ("RAM"). *See id.* In that communication, Defendant Friedmann informed Plaintiff that the RAM would meet all of the biblical requirements of his chosen religion as a Muslim. *See id.* and Exhibit "5."

In September of 2008, after complaining to several prison officials concerning the diet denial, including Defendant Dale Artus, Superintendent of Clinton, Defendant Max Patnode, Clinton Superintendent of Programs, and Defendant Brian Fischer, DOCCS Commissioner, Plaintiff voluntarily removed himself from the Controlled "A" High Fiber Diet. *See id.* at ¶¶ 23–30 and Exhibit "12."

In his complaint, Plaintiff also complains that he was denied the opportunity to observe weekly religious Jumuah sermons, also referred to as Khutbah, by closed circuit television from his SHU cell. *See id.* at ¶¶ 35–42. In an effort to obtain access to those weekly religious sermons, Plaintiff filed grievances on October 21, 2008, July 1, 2010, and September 21, 2010; sent a complaint letter on July 28, 2008 to Defendant Artus; forwarded a written complaint to Defendant Fischer on August 25, 2008; sent three letters, dated February 10, 2009, February 23, 2009, and March 2, 2009, to Defendant Imam Assallami Fadl; and lodged a complaint, dated September 21, 2010, with Clinton Superintendent, Defendant Thomas LaValley. *See id.* and Exhibit "16–22."

Plaintiff further asserts a retaliation claim, alleging that after complaining about the failure of prison officials to provide him with the requested diet and access to Jumuah sermons, he was moved from his cell location to another, where he experienced significantly worse conditions and was subjected to excessively frequent cell searches. *See id.* at ¶¶ 43–50.[1] Plaintiff also claims that his due process rights were violated in connection with his transfer to a different cell. *See id.*

[1]     Apparently, the cell searches, characterized by Plaintiff as excessive, revealed the presence of contraband on August 14, 18, 27, and 28, 2008, September 4, and 19, 2008, and November 18, 2008, as evidenced by the issuance of contraband receipts to Plaintiff. *See* Dkt. No. 1 at ¶ 59.

Finally, Plaintiff claims that, on October 2, 2010, he was denied a request for a sweet breakfast[2] as part of his religious services and that he was provided different food from that offered to Muslim inmates in the general prison population in celebration of the Ramadan Feast. *See id.* at ¶¶ 68–70. Plaintiff claims that the religious feast provided to him in the SHU consisted of rice, fish, mess hall cabbage, and mess hall beans, and did not include other foods, such as lamb, bean pie, and chicken, which were provided to Muslims in the general population in celebration of the Ramadan Feast. *See id.* at ¶ 70. In anticipation of the 2010 religious feast, and after having been denied his sweet breakfast in 2009, Plaintiff wrote to Defendant LaValley on September 22, 2010 concerning the matter, hoping to preemptively avoid a similar denial for that year. *See id.* at ¶ 68 and Exhibit "48." On October 3, 2010, after not receiving his sweet breakfast as requested, Plaintiff filed a grievance and sent letters to Defendants Fischer and LaValley, complaining of the failure to provide him with the requested sweet breakfast. *See id.* at ¶ 70 and Exhibit "49."

[2]     The sweet breakfast that Plaintiff refers to generally consists of a banana, a donut, coffee cake, soda, and other beverages. *See* Dkt. No. 1 at ¶ 70.

**\*3** Plaintiff commenced this action on November 23, 2010. *See* Dkt. No. 1. In his complaint, Plaintiff asserts that his religious freedom rights under the RLUIPA and First Amendment were infringed because of Defendants' interference with his ability to practice his chosen religion, including through denial of a sweet breakfast and proper feast, the opportunity to observe Jumuah sermons, and the denial of a Kosher Diet. *See id.* Plaintiff further claims that he was

Case 9:25-cv-00903-GTS-MJK   Document 17   Filed 11/26/25   Page 20 of 40
Walker v. Fischer, Not Reported in F.Supp.2d (2012)
2012 WL 1029614

unlawfully retaliated against for voicing his complaints and that he was subjected to cruel and unusual punishment. *See id.*

**B. Magistrate Judge Peebles' Report, Recommendation and Order**

In his February 27, 2012 Report, Recommendation and Order, Magistrate Judge Peebles recommended that the Court dismiss several Defendants and several of Plaintiff's claims. *See* Dkt. No. 40. First, Magistrate Judge Peebles recommended that the Court grant Defendants' motion as to Defendant Fischer for his lack of personal involvement, but deny the motion as to Defendants Artus and LaValley on the same ground. *See id.* at 16–18. Second, Magistrate Judge Peebles recommended that the Court find that Plaintiff failed to state a plausible First Amendment and RLUIPA deprivation claim associated with the refusal of prison officials to provide him with a Kosher Diet in lieu of the prescribed Controlled "A" High Fiber Diet. *See id.* at 20. Magistrate Judge Peebles found that "Plaintiff does not appear to contend that his Controlled 'A' Diet does not comport with his religious beliefs as a Muslim. Instead, he argues that the Cold Alternative (Kosher) Diet would also be consistent with his religious beliefs, and should be made available to him for health reasons." *See id.*

Third, Magistrate Judge Peebles found that Plaintiff was also asserting an Eighth Amendment deliberate indifference claim by alleging that the Controlled "A" High Fiber Diet did not meet his medical needs. *See id.* at 21–22. He recommended that the Court find that Plaintiff failed to allege facts sufficient to establish either the objective or subjective element of this claim. *See id.* at 23–27. Fourth, Magistrate Judge Peebles found that "Plaintiff's allegations regarding the denial of religious meals on two isolated occasions are insufficient to meet his burden of establishing [that] defendants' conduct infringes on his sincerely held religious beliefs under either the First Amendment or the RLUIPA." *See id.* at 32 (citations omitted). Further, the Report found that the fact that Plaintiff was not provided with the same Ramadan Feast meal as inmates in the general population does not trigger the protections of the First Amendment or the RLUIPA. *See id.* at 33. Magistrate Judge Peebles did, however, find that the portion of Plaintiff's free exercise claim stemming from the alleged ongoing refusal of prison officials to broadcast Jumuah sermons to his SHU cell "could be regarded as a sufficiently serious deprivation to state a plausible free exercise claim." *See id.* at 33–34 (citations omitted).

**\*4** Fifth, regarding Plaintiff's harassment claims against Defendants Hicks and Trudeau, Magistrate Judge Peebles found that most of Plaintiff's allegations amount to nothing more than taunting or threats, which are insufficient to support a cognizable section 1983 claim. *See id.* at 35–36. Further, the Report found that "the mere allegation that a false misbehavior report has been issued to an inmate similarly does not implicate unconstitutional conduct." *See id.* at 36–37 (citations omitted). Sixth, Magistrate Judge Peebles recommended that the Court find that Plaintiff's procedural due process claims against Defendant Lucia should be dismissed because the disciplinary penalty as a result of the charges leveled against him was never imposed, Plaintiff was not deprived of a cognizable liberty interest. *See id.* at 37–38.

Seventh, regarding Plaintiff's equal protection claim based on Defendants' refusal to provide him with the requested Kosher Diet, Magistrate Judge Peebles found that this claim should be dismissed because Plaintiff's "complaint lacks any factual allegations suggesting that the failure to provide [him] with the requested Kosher Diet was based upon intentional or purposeful discrimination directed at an identifiable suspect class." *See id.* at 39–40. Eighth, the Report recommended that the Court find that it is premature to grant Defendants qualified immunity at this juncture. *See id.* at 43.

Ninth, Magistrate Judge Peebles recommended that Plaintiff be given leave to amend with respect to the claims for which dismissal was recommended. *See id.* at 44. And, finally, Magistrate Judge Peebles denied Plaintiff's motion for leave to amend/join parties in light of his failure to satisfy the requirements set forth in Local Rule 7.1(a)(4). *See id.* at 46. Specifically, Magistrate Judge Peebles held that Plaintiff submitted a proposed pleading "which adds to, but does not replace, his amended complaint[,]" and that "various of the allegations set forth in the proposed amended complaint purport to alter factual allegations contained within plaintiff's initial complaint." *See id.*

**C. Plaintiff's objections**

On March 16, 2012, the Court received Plaintiff's objections to Magistrate Judge Peebles' Report, Recommendation and Order. *See* Dkt. No. 41. In his objections, Plaintiff first argues that Magistrate Judge Peebles erred in finding that the denial of a Kosher Diet did not violate his First and Eighth Amendment rights or his rights under the RLUIPA. *See id.* at 7.[3] Plaintiff claims that the Report incorrectly provides that " 'Plaintiff does not appear to contend that his Controlled "A"

Diet does not comport with his religious beliefs as a Muslim.' " *See id.* (quotation omitted). Citing to the exhibits attached to his complaint, Plaintiff alleges that " '[e]ating the High Fiber Diet as it is, is a substantial burden on me because this food is in violation of my religious belief, and it's not producing the results I need to maintain my health.' " *See id.* (quoting Dkt. No. 1–1 at Exhibit "4"). Plaintiff claims that the large amounts of meat contained in the High Fiber Diet are not processed in accordance with his religious beliefs, but meats contained in Kosher or Halal (permissible) Muslim meals would be. *See id.* at 8.

3    To avoid confusion, anytime the Court references a specific page number for an entry on the docket, it will cite to the page number assigned by the Court's electronic filing system.

**\*5** Moreover, Plaintiff alleges that the fact that he remained on the High Fiber Diet for over one year and that his colonoscopy still showed that he had "several internal hemorrhoids from his constipation and irregularity is proof the High Fiber Diet was ineffective and inadequate." *See id.* at 9. Plaintiff claims that the Court should focus not only on the "several internal hemorrhoids" when determining if he has a serious medical need, but on the fact that the ineffective treatment, causing these "perpetual" hemorrhoids, makes him more likely to get colon cancer in the future. *See id.* at 10.

Next, Plaintiff claims that the RLUIPA and the First Amendment's Free Exercise Clause provide that inmates must be given meals that conform to their religious beliefs. *See id.* at 11. Plaintiff alleges that, by denying him the only religious meal options that met his dietary needs as well as his religious beliefs violated his rights. *See id.* at 11–12. Finally, Plaintiff asks that the Court reserve decision on Magistrate Judge Peebles' Report, Recommendation and Order "until it can be accessed with the facts contained in the amended and supplemental complaint as a whole." *See id.* at 12–14.

### III. DISCUSSION

**A. Standard of review**

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a *"de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which

merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir,* No. 9:08–CV–322, 2011 WL 933846, \*1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b) (1).

In a rule 12(b)(6) motion to dismiss, the court must accept as true all of the factual allegations in the complaint, which is deemed to include any written instrument attached to the complaint as an exhibit, any materials incorporated into it by reference, and any other documents that are integral to it. *See Sira v. Morton,* 380 F.3d 57, 67 (2d Cir.2004) (citations omitted). Moreover, the court must draw all reasonable inferences from those factual allegations in the plaintiff's favor. *See Hayden v. Paterson,* 594 F.3d 150, 160 (2d Cir.2010) (quotation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to it nor incorporated by reference into the pleading. *See Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir.2006) (quoting *Chambers v. Time Warner, Inc. .,* 282 F.3d 147, 152–53 (2d Cir.2002)). Dismissal will only be granted by the court if it "appears beyond doubt that plaintiff can prove no set of facts in support of the claim which would entitle him to relief." *Branham v. Meachum,* 77 F.3d 626, 628 (2d Cir.1996).

**\*6** So read, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim to relief is plausible on its face "when the [P]laintiff pleads fact[s] ... that allow [ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citation omitted).

When a dismissal is sought against a *pro se* litigant, the court will afford the non-movant special solicitude. *See Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006) (quotation and citations omitted). The submissions of a *pro se* litigant are to be construed liberally and interpreted "to raise the strongest arguments that they suggest." *Id.* at 475 (internal quotation and citations omitted).

**B. Plaintiff's First Amendment and RLUIPA claims**

2012 WL 1029614

The First Amendment to the United States Constitution guarantees the right to free exercise of religion. *See U.S. Const. amend. I; Cutter v. Wilkinson,* 544 U.S. 709, 719, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005). As is true with regard to the First Amendment generally, the free exercise clause applies to prison inmates, subject to appropriate limiting factors. *See Ford v. McGinnis,* 352 F.3d 582, 588 (2d Cir.2003) (holding that "[p]risoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause" (citing *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974)). Thus, for example, under accepted free exercise jurisprudence, inmates are guaranteed the right to participate in congregate religious services under most circumstances. *See, e.g., Salahuddin v. Coughlin,* 993 F.2d 306, 308 (2d Cir.1993) (citing cases).

The right of prison inmates to exercise their religious beliefs, however, is not absolute or unbridled, but instead is subject to valid penological concerns, including those relating to institutional security. *See O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); *Salahuddin,* 993 F.2d at 308. For example, a determination of whether an inmate's constitutional rights have been infringed by the refusal to permit his attendance at a religious service hinges upon the balancing of the inmate's First Amendment free exercise right against the institutional needs of officials tasked with the increasingly daunting task of operating prison facilities. This determination is "one of reasonableness, taking into account whether the particular [act] affecting [the] constitutional right ... is 'reasonably related to legitimate penological interests.' " *Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir.1990) (quoting *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987)).

Undeniably, the reach of the First Amendment's free exercise clause extends beyond mere attendance at congregate religious services to other aspects of prison life including, pertinently, that of an inmate's diet and participation in religious meals. *See McEachin v. McGuinnis,* 357 F.3d 197, 204–05 (2d Cir.2004); *Ford,* 352 F.3d at 597. Ordinarily, the Eighth Amendment establishes as a constitutional minimum the requirement that inmates be provided with nutritionally adequate meals; provided this threshold is met, prison officials otherwise retain considerable discretion in determining dietary constituents. *See Word v. Croce,* 169 F.Supp.2d 219, 226 (S.D.N.Y.2001). This requirement, however, is on occasion narrowed by the First Amendment's free exercise clause, which is broad enough to include an

inmate's "clearly established" right "to a diet consistent with his or her religious scruples." *Ford,* 352 F.3d at 597; *see also Bass v. Coughlin,* 976 F.2d 98, 99 (2d Cir.1992). "Courts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights." *McEachin,* 357 F.3d at 203.

**\*7** In the present matter, Plaintiff sent a letter to Defendant Friedmann requesting that he be placed on the Cold Alternative Diet. *See* Dkt. No. 1–1 at 27. Defendant Friedmann responded that, because he is Muslim, he is not eligible for the Cold Alternative Diet. *See id.* at 28. Defendant Friedmann, however, informed Plaintiff that the Religious Alternative Meal ("RAM") meets "Biblical kosher standards," and, therefore, "meets Moslem dietary requirements." *See id.* Defendant Friedmann went on to explain to Plaintiff that the RAM diet is served in the Mess Hall and that, if he is keeplocked, Plaintiff can "obtain it by requesting the form from your Block CO." *See id.* Despite being presented with this option which would have satisfied Plaintiff's religious dietary requirements, Plaintiff declined the option.

"Courts have consistently held that DOCCS' Religious Alternative Meal is sufficient to sustain Muslim prisoners' good health without violating dietary laws and that a strictly Halal diet is not required." *DeBlasio v. Rock,* No. 9:09–CV–1077, 2011 WL 4478515, \*20 (N.D.N.Y. Sept.26, 2011) (citing *Muhammad,* 98 F.Supp.2d at 343–44 (collecting cases)). Even assuming that some parts of Plaintiff's High Fiber Diet did not comport with his religious beliefs, [4] as he claims in his objections, Plaintiff was offered a diet that meets his religious dietary requirements, but declined the offer. As such, Plaintiff has failed to state a plausible First Amendment and RLUIPA deprivation claim associated with the refusal of prison officials to provide him with a Kosher Diet in lieu of the prescribed Controlled "A" High Fiber Diet.

4        The Court notes that Plaintiff's complaint does not state that the Controlled "A" High Fiber diet does not comport with his religious dietary needs. Plaintiff does, however, make this claim in the complaint letter he sent to Defendant Friedmann, which he attached as an exhibit to his complaint. *See* Dkt. No. 1–1 at 28.

Moreover, Magistrate Judge Peebles correctly found that Plaintiff's allegations regarding the denial of religious meals

—*i .e.,* sweet breakfast—on two isolated occasions and his contention that his Ramadan Feast menu was not identical to the menu offered to non-SHU inmates are insufficient to state a plausible claim that Defendants' conduct infringed on his sincerely held religious beliefs under either the First Amendment or the RLUIPA. *See Deblasio,* 2011 WL 4478515, at *18. Significantly, Plaintiff does not claim that his Ramadan Feast menu was inconsistent with his religious beliefs, just that it was different than that which was offered to inmates in the general population. This claim clearly falls far short of establishing a First Amendment or RLUIPA violation.

The portion of Plaintiff's religious exercise claim growing out of the alleged ongoing refusal of prison officials to broadcast Jumuah sermons to his SHU cell, however, does plausibly allege a sufficiently serious deprivation to state a free exercise claim. *See, e.g., Crawford v. Clarke,* 578 F.3d 39, 43–44 (1st Cir.2009). [5] As such, the Court finds that Magistrate Judge Peebles correctly recommended that the Court should deny Defendants' motion as to this claim as to Defendants Fadl, Artus and LaValley.

[5]    The Court notes that, although Plaintiff has alleged a plausible free exercise claim, courts in the Second Circuit have granted motions for summary judgment as to similar claims, considering the burden placed on the prison officials in accommodating SHU inmates, the ability of SHU inmates to get counseling from a member of the ministerial staff on a weekly basis, and the prison's legitimate-penological interest in denying these requests. *See, e.g., Smith v. Artus,* No. 9:07–CV–1150, 2010 WL 3910086, *22–*23 (N.D.N.Y. Sept.30, 2010).

### C. Eighth Amendment claims

**\*8** Plaintiff's claims relating to his meals are also asserted under the Eighth Amendment. The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. This prohibition includes any "unnecessary and wanton infliction of pain" on those who have been convicted of crimes. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994) (citations omitted). Nevertheless, the United States Supreme Court has recognized that not "every injury" a prisoner suffers "translates into constitutional liability for prison officials." *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

Prisons are required under the Eighth Amendment to provide for the basic human needs of those incarcerated, including "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles v. Coughlin,* 725 F.2d 12, 15 (2d Cir.1983) (per curium) (citation and internal quotation marks omitted). The deprivation must be sufficient to create a serious danger to the health of the inmate. *See, e.g., Beckford v. Portuondo,* 151 F.Supp.2d 204, 213 (N.D.N.Y.2001) (finding a deprivation of two of three meals per day for eight days created an issue of material fact sufficient for Eighth Amendment claim to survive summary judgment); *Moss v. Ward,* 450 F.Supp. 591, 596–597 (W.D.N.Y.1978) (finding the denial of food for four consecutive days and reduced food for three days thereafter sufficient to violate prisoner's Eighth Amendment rights). Where a particular diet is medically required, denial of a smaller number of meals may be sufficient in some circumstances. *See Abdush–Shahid v. Coughlin,* 933 F.Supp. 168, 180 (N.D.N.Y.1996) (citing *Robles,* 725 F.2d at 15–16).

In the present matter, Plaintiff's Controlled "A" High Fiber Diet was prescribed for him by the medical personnel at Clinton. Although Plaintiff's complaint alleges that he suffers from constipation and internal hemorrhoids, the medical records demonstrate that he received constant medical attention for those conditions. *See* Dkt. No. 1–1 at Exhibit "1." Magistrate Judge Peebles correctly concluded that the complaint does not allege facts from which one could conclude that his medical conditions are sufficiently serious to meet the objective requirements of an Eighth Amendment claim. *See Lowman v. Perlman,* No. 9:06–CV–422, 2008 WL 4104554, *5 (N.D.N.Y. Aug.29, 2008); *Cabassa v. Gummerson,* No. 01–CV–1039, 2006 WL 1559215, *9–*10 (N.D.N.Y. Mar.30, 2006); *Kendall,* 2004 WL 1752818, at *6.

Further, even assuming that Plaintiff has met the objective element, Plaintiff has failed to allege facts suggesting a plausible claim that any Defendants were subjectively indifferent to his serious medical needs. Although Plaintiff complains that the Controlled "A" High Fiber Diet does not meet his needs because of the lack of peanut butter and the reduction of bread from twelve slices to eight, as well as the lack of desserts, Plaintiff does not point to any adverse impact upon his health other than to allege, in conclusory terms, that his condition requires that he be provided with food with a higher fiber content than what he receives under the Controlled "A" High Fiber Diet. Defendant Johnson,

2012 WL 1029614

however, responded to Plaintiff's requests by stating that he already receives a diet high in fiber, which is further supplemented by Metamucil and, therefore, that Plaintiff did not require additional fiber for his medical condition. *See Taylor v. Chalom,* No. 9:10–CV–1494, 2011 WL 6942891, *8 (N.D.N.Y. Dec. 13, 2011)* (holding that when a plaintiff alleges nothing more than a mere disagreement with the treatment he received, the plaintiff has failed to satisfy the subjective element of the deliberate indifference test) (citations omitted).

**\*9** Based on the foregoing, the Court finds that Magistrate Judge Peebles corrected recommended that the Court should grant Defendants' motion as to Plaintiff's Eighth Amendment claims. At best, Plaintiff alleges malpractice against Defendants, which is insufficient to support an Eighth Amendment violation.

### D. Plaintiff's remaining claims

In addition to the claims discussed above, Plaintiff also asserted harassment claims against Defendants Hicks and Trudeau, a due process claim against Defendant Lucia, and an equal protection claim based upon Defendants' refusal to provide him with the requested Kosher Diet. Magistrate Judge Peebles recommended that the Court dismiss each of these claims and Plaintiff did not object to his recommendation. Having reviewed these causes of action and Magistrate Judge Peebles' Report, Recommendation and Order, the Court finds that Magistrate Judge Peebles' correctly determined that Plaintiff failed to allege facts that plausibly state these causes of action.

### E. Amendment of the Complaint

Following Defendants' motion to dismiss, Plaintiff moved for leave to amend his complaint and to join additional parties. *See* Dkt. No. 36. In his motion, Plaintiff seeks to add Corrections Captain Facteau and Sergeant Delutis as new defendants, and to assert additional claims, including a retaliation claim based upon events not recounted in his initial complaint, and several of which he claims have occurred since the commencement of this action. *See id.*

Magistrate Judge Peebles denied Plaintiff's motion for leave to amend because of his failure to comply with Local Rule 7.1(a)(4). *See* Dkt. No. 40 at 46. Specifically, Magistrate Judge Peebles found that Plaintiff's proposed amended pleading simply adds to, but does not replace his amended complaint and that Plaintiff's proposed amended

complaint alters factual allegations contained within his initial complaint. *See id.* As such, Magistrate Judge Peebles recommended that the Court deny Plaintiff's motion to amend and/or supplement his complaint, and to join additional parties, without prejudice to renewal upon filing a pleading in conformity with the Local Rules. *See id.* at 47.

On the same day that Plaintiff filed his objections to Magistrate Judge Peebles' Report, Recommendation and Order, Plaintiff renewed his motion for leave to file an amended and supplemental verified complaint and to add additional defendants. *See* Dkt. No. 42. Despite Magistrate Judge Peebles' instruction regarding the requirements for filing an amended complaint, Plaintiff again fails to abide by the Local Rules. The renewed proposed amended pleading is nearly identical to the proposed amended pleading that Magistrate Judge Peebles found was not in conformity with the Local Rules. *Compare* Dkt. No. 36–2; *with* Dkt. No. 42–2. Plaintiff's renewed proposed amended pleading again fails to supersede the original pleading in all respects, and incorporates his original pleading. *See* Dkt. No. 42–2. Plaintiff's renewed proposed amended pleading begins at paragraph eighty ("80")—where the original complaint ends—and asks the Court to change facts contained in the original complaint. *See id.* at ¶¶ 82–82.

**\*10** A motion to amend a pleading is governed by Rule 15(a) of the Federal Rules of Civil Procedure, which states that "[t]he court should freely give leave [to amend] when justice so requires." Fed.R.Civ.P. 15(a); *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The Local Rules of the Northern District of New York provide, in pertinent part, that amended pleadings must be complete pleadings which will supersede the original in all respects. *See* N.D.N.Y. L.R. 7.1(a)(4). The Local Rules further state that a "party shall not incorporate any portion of its prior pleading into the proposed amended pleading by reference." *Id.* One of the purposes of the requirement that an amended complaint be itself a complete pleading, is to ensure that all of the allegations asserted against the defendant(s) are contained in a single document, thereby reducing the likelihood that a party will overlook one or more allegations against him. Moreover, this requirement eliminates the confusing nature of "piecemeal" amended complaints. *See Chapdelaine v. Keller,* No. 9:95–CV–1126, 1999 WL 34998130, *1 (N.D.N.Y. Sept.28, 1999)* (citation omitted).

Based on the foregoing, the Court finds that Plaintiff's renewed proposed amended pleading is not a proper pleading

because it is not a **complete pleading** which completely replaces his original complaint, as required by the Local Rules. As such, the Court denies Plaintiff's motion to amend and/or supplement his complaint without prejudice to renewal upon filing a complaint that is in conformity with the Local Rules.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, Magistrate Judge Peebles' Report, Recommendation and Order and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Peebles' February 27, 2012 Report, Recommendation and Order is **ADOPTED in its entirety** for the reasons stated therein; and the Court further

**ORDERS** that Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part;** and the Court further

**ORDERS** that Plaintiff's motion to amend and/or supplement his complaint is **DENIED without prejudice** to renewal; and the Court further

**ORDERS** that all further pretrial matters are referred to Magistrate Judge Peebles; and the Court further

**ORDERS** that the Clerk of the Court shall serve this Memorandum–Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 1029614

---

End of Document                                         © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|-------|-----|-------|------|------|
| **1.  Docket 9:10cv01431**<br>WALKER v. FISCHER ET AL | — | N.D.N.Y. | Nov. 29, 2010 | Docket |

**History (3)**

**Direct History (1)**

1. Walker v. Fischer
   2012 WL 1029614 , N.D.N.Y. , Mar. 26, 2012

**Related References (2)**

2. Walker v. Artus
   2013 WL 5464909 , N.D.N.Y. , Sep. 30, 2013

3. Walker v. Artus
   998 F.Supp.2d 18 , N.D.N.Y. , Feb. 21, 2014

    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:25-cv-00903-GTS-MJK    Document 17    Filed 11/26/25    Page 28 of 40

Santiagocruz v. Doe #1, Not Reported in Fed. Supp. (2021)

2021 WL 5629097

2021 WL 5629097
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jose SANTIAGOCRUZ, Plaintiff,

v.

John DOE #1, Officer, Great Meadow
Correctional Facility, et al., Defendants.

9:21-CV-0806 (TJM/ML)
|
Signed 12/01/2021

**Attorneys and Law Firms**

JOSE SANTIAGOCRUZ, Plaintiff, pro se, 19-A-2161, Five
Points Correctional Facility, Caller Box 119, Romulus, NY
14541.

**DECISION and ORDER**

THOMAS J. MCAVOY, Senior United States District Judge

**I. INTRODUCTION**

 *1  Pro se plaintiff Jose Santiagocruz ("Plaintiff")
commenced this civil rights action asserting claims arising
out of his confinement at Great Meadow Correctional Facility
("Great Meadow C.F."). Dkt. No. 1 ("Compl."). Plaintiff
also filed a motion for the appointment of counsel. Dkt. No.
4. In a Decision and Order filed on October 26, 2021 (the
"October Order"), the Court reviewed the sufficiency of the
Complaint in accordance with 28 U.S.C. § 1915(e) and 28
U.S.C. § 1915A. Dkt. No. 12. Based upon that review, the
Court found that Plaintiff's Eighth Amendment failure-to-
protect claims against John Does #1 through #5, Correctional
Officers at Great Meadow C.F., survived sua sponte review.
*Id.* Pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d. Cir. 1997)
(per curiam), the Court directed the Attorney General's Office
attempt to ascertain the full name of the defendants. *Id.* The
Court also denied Plaintiff's motion for counsel. *Id.*

On November 24, 2021, the Attorney General's Office
responded to the Court's directive. Dkt. No. 16.

Presently before the Court are the following motions: (1)
Plaintiff's request for preliminary injunctive relief (Dkt. No.
14); (2) Plaintiff's motion for reconsideration of the Court's

denial of Plaintiff's motion for counsel (Dkt. No. 15); and (3)
Plaintiff's motion to "add on to the complaint" (Dkt. No. 15).

**II. DISCUSSION**

**A. Motion for Preliminary Injunction**

**1. Legal Standard**

Preliminary injunctive relief "is an extraordinary and drastic
remedy, one that should not be granted unless the movant, by
a clear showing, carries the burden of persuasion." *Moore v.
Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005)
(quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).
"In general, district courts may grant a preliminary injunction
where a plaintiff demonstrates 'irreparable harm' and meets
one of two related standards: 'either (a) a likelihood of success
on the merits, or (b) sufficiently serious questions going to the
merits of its claims to make them fair ground for litigation,
plus a balance of the hardships tipping decidedly in favor of
the moving party.' " *Otoe-Missouria Tribe of Indians v. N.Y.
State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014)
(quoting *Lynch v. City of New York*, 589 F.3d 94, 98 (2d Cir.
2009) (internal quotation marks omitted)). However, when
the moving party seeks a "mandatory preliminary injunction
that alters the status quo by commanding a positive act," the
burden is even higher. *Cacchillo v. Insmed, Inc.*, 638 F.3d
401, 405-06 (2d Cir. 2011) (citing *Citigroup Global Mkts.,
Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598
F.3d 30, 35 n.4 (2d Cir. 2010) (internal quotation marks
omitted)). A mandatory preliminary injunction "should issue
only upon a clear showing that the moving party is entitled to
the relief requested, or where extreme or very serious damage
will result from a denial of preliminary relief." *Id.* (quoting
*Citigroup Global Mkts.*, 598 F.3d at 35 n.4) (internal quotation
marks omitted); *see Tom Doherty Assocs. v. Saban Enter.,
Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) (explaining that a
plaintiff seeking a mandatory injunction must make a "clear"
or "substantial" showing of a likelihood of success on the
merits of his claim).

 *2  The district court has wide discretion in determining
whether to grant preliminary injunctive relief. *Moore*, 409
F.3d at 511. "In the prison context, a request for injunctive
relief must always be viewed with great caution so as not
to immerse the federal judiciary in the management of state
prisons." *Fisher v. Goord*, 981 F.Supp. 140, 167 (W.D.N.Y.
1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846-47
(1994)) (other citations omitted).

Case 9:25-cv-00903-GTS-MJK Document 17 Filed 11/26/25 Page 29 of 40

Santiagocruz v. Doe #1, Not Reported in Fed. Supp. (2021)

2021 WL 5629097

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Bisnews AFE (Thailand) Ltd. v. Aspen Research Grp. Ltd.*, 437 Fed. App'x 57, 58 (2d Cir. 2011) (summary order) (citation omitted). Generally an alleged violation of a constitutional right creates a presumption of irreparable harm. *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996). However, speculative, remote or future injury is not the province of injunctive relief. *Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983). Rather, a plaintiff seeking to satisfy the irreparable harm requirement must demonstrate that "absent a preliminary injunction [he or she] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Bisnews AFE (Thailand)*, 437 Fed. App'x at 58 (quoting *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)); *Garcia v. Arevalo*, No. 93-CV-8147, 1994 WL 383238, at *2 (S.D.N.Y. June 27, 1994) ("It is well settled that an allegation of the mere possibility of irreparable harm is insufficient to justify the drastic remedy of preliminary injunction.... A party who seeks the extraordinary remedy of a preliminary injunction must show the alleged irreparable harm to be imminent, not remote or speculative, and the alleged injury to constitute one that is incapable of being fully remedied by monetary damages." (citations omitted)). A finding of irreparable harm cannot be based solely on past conduct. *Haden v. Hellinger*, No. 9:14-CV-0318, 2016 WL 589703 at *1 (N.D.N.Y. Feb. 11, 2016).

Furthermore, "[t]o prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint." *Candelaria v. Baker*, No. 00-CV-0912, 2006 WL 618576, at *3 (W.D.N.Y. Mar. 10, 2006) (citations omitted).

## 2. Analysis

Plaintiff, who is presently incarcerated at Five Points Correctional Facility ("Five Points C.F."), seeks an order "to mandate [he] be separated from general population at [his] current facility." Dkt. No. 14. Plaintiff alleges "DOCCS employees keep placing me in harms way as retaliation for me filing my lawsuit." *Id.*

As discussed *supra*, the defendants herein are John Does #1 through #5, Correctional Officers at Great Meadow C.F. To the extent that Plaintiff seeks injunctive relief against individuals who are not defendants in this action, injunctive relief is available against non-parties only under very limited circumstances, none of which are present here. *See* Fed. R. Civ. P. 65(d)(2); *Doctor's Associates, Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297, 302-03 (2d Cir. 1999); *United States v. Regan*, 858 F.2d 115, 120 (2d Cir. 1988); *see also In re Rationis Enterprises, Inc. of Panama*, 261 F.3d 264, 270 (2d Cir. 2001) ("A court may not grant a final, or even an interlocutory, injunction over a party over whom it does not have personal jurisdiction.").

**\*3** Even assuming Plaintiff sought relief against the proper individual(s), he has failed to plead facts suggesting irreparable harm. Plaintiff does not allege that he suffered any harm as a result of his housing assignment. Rather, Plaintiff's belief that he will likely suffer retaliation in the future is purely speculative. "[A]llegations of future injury without more do not establish a real threat of injury." *See Slacks v. Gray*, No. 9:07-CV-0501(NAM/GJD), 2008 WL 2522075, at *1 (N.D.N.Y. June 25, 2008) (citing *Garcia v. Arevalo*, No. 93-CV-8147, 1994 WL 383238, at *2 (S.D.N.Y. June 27, 1994)).

Moreover, even if the Court were to assume that Plaintiff could allege irreparable harm, Plaintiff has failed to demonstrate, with evidence, a likelihood of success on the merits of his underlying claims because the allegations in the motion are unrelated to the underlying action. In the operative pleading, Plaintiff asserts Eighth Amendment failure-to-protect claims related to an attack by an unidentified assailant on May 20, 2021 at Great Meadow C.F. *See generally,* Compl. In the present motion, Plaintiff alleges First Amendment retaliation claims against unidentified DOCCS employees at Five Points C.F. Thus, Plaintiff cannot establish a likelihood of success on the merits and Plaintiff's request for relief is denied. *See Allen v. Brown,* No. 96-CV-1599 (RSP/GJD), 1998 WL 214418, at *4 (N.D.N.Y. Apr. 28, 1998) (denying request for injunctive relief where allegations in application for such relief were unrelated to claims asserted in the complaint); *Mitchell v. New York State Dep't of Corr. Srvs.*, No. 06-CV-6278, 2011 WL 5326054, at *3 (W.D.N.Y. Nov. 3, 2011) (denying relief where the facts underlying the request for injunctive relief are essentially unrelated to the underlying facts of the claims in the action, except for the fact that they arise in the prison context).

Case 9:25-cv-00903-GTS-MJK    Document 17    Filed 11/26/25    Page 30 of 40

Santiagocruz v. Doe #1, Not Reported in Fed. Supp. (2021)

2021 WL 5629097

The Court has reviewed Plaintiff's motion thoroughly and with due regard for his status as a pro se litigant. Plaintiff's failure to substantiate his allegations of irreparable harm with evidence in admissible form or to demonstrate a likelihood of success on the merits of his underlying claims warrants denial of his motion. *See Ivy Mar Co. v. C.R. Seasons Ltd.,* 907 F. Supp. 547, 561 (E.D.N.Y. 1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."); *Hancock v. Essential Res., Inc.,* 792 F. Supp. 924, 928 (S.D.N.Y. 1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals."). [1]

[1]   Plaintiff may pursue claims against the individuals responsible for the alleged wrongdoing through DOCCS' administrative procedures and, if necessary, by means of a properly filed action.

**B. Motion for Reconsideration**

In July 2021, Plaintiff filed a motion for the appointment of counsel. Dkt. No. 4. In the October Order, the Court denied Plaintiff's motion for counsel holding:

At this preliminary stage, the Court is unable to determine whether Plaintiff meets the threshold requirement that at least some aspects of his claim are "likely to be of substance." *Hodge,* 802 F.2d at 61. Plaintiff has not submitted any evidence supporting his claims and Plaintiff's request for counsel is not accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector. *See Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir. 1994); *Cooper v. Sargenti Co., Inc.,* 877 F.2d 170, 172, 174 (2d Cir. 1989). Even if the Court were to assume, for purposes of this motion, that Plaintiff's position seems likely to be of substance, the relevant factors weigh decidedly against granting Plaintiff's motion at this time. For example: (1) the case does not present novel or complex issues; and (2) it appears to the Court as though, to date, Plaintiff has been

able to effectively litigate this action. The Court is unaware of any special reasons why appointment of counsel at this time would be more likely to lead to a just determination of this litigation. *See Terminate Control Corp.,* 28 F.3d at 1341; *Hodge,* 802 F.2d at 61.

**\*4**  Dkt. No. 12 at 11.

Now, Plaintiff seeks reconsideration of the portion of the October Order that denied his motion for counsel. *See* Dkt. No. 15 at 1-3. Plaintiff claims his "primary spoken language is Spanish" and "up until this point plaintiff has had the assistance of the law library clerks" to read his legal work. *Id.* However, Plaintiff "presently" does not have access to the law library, clerks, or any legal assistance because he is "segregated" in Involuntary Protective Custody ("IPC"). *Id.* Plaintiff asserts he cannot comprehend, respond, read, or write any motions for this action and that he requires assistance to obtain investigation to support his claims. *Id.*

"A court may justifiably reconsider its previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent manifest injustice." *Delaney v. Selsky,* 899 F.Supp. 923, 925 (N.D.N.Y. 1995) (citing *Doe v. New York City Dep't of Soc. Servs.,* 709 F.2d 782, 789 (2d Cir. 1983)). "The standard for granting a motion for reconsideration is strict[.]" *Shrader v. CSX Transportation, Inc.,* 70 F.3d 255, 257 (2d Cir. 1995). A motion for reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided." *Id.* Furthermore, a motion for reconsideration is not to be used for "presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.' " *Sequa Corp. v. GBJ Corp.,* 156 F.3d 136, 144 (2d Cir. 1998). In the interests of justice, the Court will grant Plaintiff's request for reconsideration.

The Court has thoroughly reviewed Plaintiff's motion for counsel, with consideration of the factors outlined in the October Order, and finds no change of circumstances that would warrant appointment of counsel pro bono for Plaintiff at this time. Plaintiff's inability to "read or write English" has not prevented him from effectively litigating this matter thusfar. Indeed, the motion for reconsideration is ten pages

Case 9:25-cv-00903-GTS-MJK    Document 17    Filed 11/26/25    Page 31 of 40

Santiagocruz v. Doe #1, Not Reported in Fed. Supp. (2021)

2021 WL 5629097

in length and includes legal arguments, citations to caselaw, and various requests for relief. *See* Dkt. No. 15. Moreover, Plaintiff's motion for reconsideration is not accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

Therefore, for the reasons set forth herein and in the October Order, Plaintiff's motion for counsel is denied, without prejudice. Plaintiff is advised that if the case survives dispositive motions and proceeds to trial, Plaintiff may file a new motion for the appointment of counsel.

### C. Motion to Amend Complaint

Plaintiff moves to "add to the complaint" and attempts to "provide a clearer understanding of the facts." Dkt. No. 15 at 4. In his submission, Plaintiff asserts new facts and claims against individuals not named in the original Complaint. *Id.* at 4-10.

The filing of amended pleadings is governed by *Rule 15 of the Federal Rules of Civil Procedure*. A party may amend as of right, if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. *Fed. R. Civ. P. 15*. An amended complaint is intended to replace and supercede in its entirety the previous complaint. Once accepted for filing, the amended complaint becomes the operative pleading, and the original complaint is no longer considered. *See Dluhos v. Floating & Abandoned Vessel*, 162 F.3d 63, 68 (2d Cir. 1998) ("[I]t is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.") (citing *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). This requirement is buttressed by the Local Rules of Practice of this District ("Local Rules"), which provide, in pertinent part, that amended pleadings must be complete pleadings which will supersede the original pleading in all respects. *See* N.D.N.Y.L.R. 15.1. The Local Rules further state that a "party shall not incorporate any portion of its prior pleading into the proposed amended pleading by reference." *Id.* One of the purposes of the requirement that an amended complaint be itself a complete pleading, is to ensure that all of the allegations asserted against the defendants are contained in a single document, thereby reducing the likelihood that a party will overlook one or more allegations against him. *See Walker v. Fischer*, No. 10-CV-1431 (MAD/DEP), 2012 WL 1029614, at *10 (N.D.N.Y. Mar. 26, 2012) (citation omitted). This requirement eliminates the confusing nature of "piecemeal" amended complaints. *See Chapdelaine v.*

*Keller*, 9:95-CV-1126 (HGM/GS), 1999 WL 34998130, at *1 (N.D.N.Y. Sep. 28, 1999). In other words, an amended complaint must include all of the allegations against each of the defendants against whom the case is going forward so that the amended complaint may stand alone as the sole complaint in the action. "While we have insisted that the pleadings prepared by [pro se litigants] be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *McNeil v. U.S.*, 508 U.S. 106 (1993).

**\*5** *Rule 10 of the Federal Rules of Civil Procedure* requires that a pleading contain a caption which names "all the parties" and further provides, in part, that

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

*Fed. R. Civ. P. 10(b)*. A party not named in the caption of the complaint is not a party to the action. *Abbas v. U.S.*, No. 10-CV-0141, 2014 WL 3858398, at *2 (W.D.N.Y. Aug. 1, 2014) (the failure to name a party in the caption makes it "infeasible for the Court to determine which of the individual officers mentioned in the body of the complaint should be deemed to be defendants to which claims).

A complaint that fails to comply with these Rules "presents too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [a plaintiff's] claims[.]" *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

The submission presently before the Court is not in compliance with the Federal Rules or N.D.N.Y. Local Rule 15.1. *See* Dkt. No. 15 at 4-10. As explained above, Plaintiff may not submit an amended complaint and at the same time proceed with the original complaint. Compliance with

**Santiagocruz v. Doe #1, Not Reported in Fed. Supp. (2021)**

2021 WL 5629097

this Court's local rules is "not merely technical in nature." *See Cusamano v. Sobek*, 604 F.Supp.2d 416, 508 (N.D.N.Y. 2009).

At this juncture, the Court will not accept the facts and allegations set forth in Plaintiff's letter (Dkt. No. 15 at 4-10) as the Amended Complaint or the operative pleading. Plaintiff is directed to, within **SIXTY DAYS** of the within Order, submit a proposed amended pleading that complies with this Court's Local Rules.

### D. Service Issues

On November 24, 2021, the Court received a response to the October Order from the Office of the New York State Attorney General. *See* Dkt. No. 16. The response was forwarded to Plaintiff at Five Points C.F. *See id.* at 2. It is ordered that Plaintiff has **sixty days** from the date of this Order to file an amended complaint that correctly identifies the John Doe defendants in his Complaint. In an effort to assist Plaintiff in drafting the proposed amended complaint, the Clerk shall forward to Plaintiff a copy of his Complaint, without exhibits (Dkt. No. 1). Plaintiff may identify the Doe defendants by handwriting the name in the appropriate locations throughout on the copy of the Complaint and indicate in the caption of the document that it is the Amended Complaint. Once Plaintiff has made these changes to the copy of the operative pleading, captioned it as his Amended Complaint, and signed the proposed pleading, he should submit it to the Court for review. Plaintiff is advised that, if he should fail to identify the Doe Defendants, his action is subject to dismissal without prejudice.

## III. CONCLUSION
**WHEREFORE**, it is hereby

 **\*6 ORDERED** that Plaintiff's motion for a preliminary injunction (Dkt. No. 14) is **DENIED**; and it is further

**ORDERED** that Plaintiff motion for reconsideration (Dkt. No. 15) is **GRANTED in part and DENIED in part**; and it is further

**ORDERED** that Plaintiff's motion to amend the Complaint (Dkt. No. 15) is **DENIED**; and it is further

**ORDERED** that Plaintiff has **sixty days** from the date of this Order to file an amended complaint that correctly identifies the John Doe defendants in his Complaint. The Clerk of the Court is directed to provide Plaintiff a copy of his Complaint; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2021 WL 5629097

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 9:21-CV-00806**<br>Santiagocruz v. Doe #1 et al | — | N.D.N.Y. | July 15, 2021 | Docket |

**History (7)**

**Direct History (2)**

🚩 1. Santiagocruz v. Doe #1
2021 WL 12354177 , N.D.N.Y. , Oct. 26, 2021

*On Reconsideration in Part*

> 2. Santiagocruz v. Doe #1 👓
> 2021 WL 5629097 , N.D.N.Y. , Dec. 01, 2021

**Related References (5)**

3. Santiagocruz v. Doe #1
2021 WL 12354176 , N.D.N.Y. , Aug. 12, 2021

4. Santiagocruz v. Doe #1
2022 WL 292033 , N.D.N.Y. , Feb. 01, 2022

5. Santiagocruz v. Doe #1
2022 WL 22951109 , N.D.N.Y. , Nov. 30, 2022

6. Santiagocruz v. Doe #4
2023 WL 9600956 , N.D.N.Y. , Dec. 15, 2023

*Report and Recommendation Adopted by*

7. Santiagocruz v. Gordon
2024 WL 532499 , N.D.N.Y. , Feb. 08, 2024

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Allevato v. Howard, Not Reported in Fed. Supp. (2022)

2022 WL 42436

2022 WL 42436

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Michael F. ALLEVATO, Petitioner,

v.

David HOWARD, Superintendent, Respondent.

9:21-CV-1159 (GTS)

|

Signed 01/05/2022

**Attorneys and Law Firms**

MICHAEL F. ALLEVATO, Petitioner, pro se, 16-B-2208, Woodbourne Correctional Facility, 99 Prison Road, P.O. Box 1000, Woodbourne, NY 12788.

**DECISION and ORDER**

GLENN T. SUDDABY, United States Chief District Judge

**\*1** Petitioner Michael Allevato seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Dkt. No. 1, Petition ("Pet."). [1] Petitioner argues that he is entitled to relief because his counsel was constitutionally ineffective. Pet. at 5-11.

[1]     For the sake of clarity, citations to petitioner's filings refer to the pagination generated by CM/ECF, the Court's electronic filing system.

On November 9, 2021, the Court directed petitioner to file an affirmation explaining why the statute of limitations should not bar his petition. Dkt. No. 6, Decision and Order ("November Order"). In compliance with the November Order, petitioner timely filed an affirmation, as well as several supporting exhibits. Dkt. No. 7, Affirmation; Dkt. No. 7-1, Exhibits; Dkt. No. 10, Supporting Affidavit; Dkt. No. 11, Letter in Support. Respondent was directed to answer the petition. Dkt. No. 8, Decision and Order. The deadline is presently scheduled for March 1, 2022.

On December 14, 2021, the Court received petitioner's motion for a preliminary injunction. Dkt. No. 12, Motion. Respondent was directed to file a response. Text Notice dated 12/16/21. Respondent recently requested, and was granted, an extension; therefore, the response is due on or before January 14, 2022. Dkt. No. 13, Letter Motion, Dkt. No. 16, Text Order.

Presently pending before the Court are petitioner's motions to (1) remove and join claims from a state court action into the present habeas petition and (2) include an additional claim in the pending action based upon new evidence. Dkt. Nos. 14 & 15, Motions.

In the first motion, as further explained by petitioner's second letter motion, petitioner intends to add claims to his pending federal action from his recent state court action which alleged various constitutional violations. Dkt. No. 14 at 10-48. Specifically, petitioner also claims that he is entitled to federal habeas relief because (1) his Fourth Amendment rights were violated when he was subjected to a warrantless, eavesdropping, controlled telephone call without properly waiving his *Miranda* rights, Dkt. No. 14 at 10-25; (2) petitioner's guilty plea was coerced and induced by fraud, *id.* at 11-12, 38-48; (3) his due process rights were violated when petitioner was denied a prompt preliminary hearing and probable cause determination, *id.* at 25-26; and (4) his grand jury proceedings were deficient because the evidence the grand jury used to indict petitioner was procured by unconstitutional means, *id.* at 29-38. Petitioner also asserts that new evidence – sworn affidavits from his mother and step-father – demonstrates his actual innocence; however, it is unclear whether petitioner intends this argument to serve as a reason for equitable tolling, a new claim, or both. *Id.* at 27-28.

In the second motion, petitioner first clarifies that he wants to join the claims from his state action to his federal habeas petition. Dkt. No. 15 at 1. However, it is unclear whether the state court actions have been fully appealed – and therefore exhausted – or if they are still pending in state court. Additionally, petitioner argues that new evidence – annual reports from law enforcement agencies – demonstrates that the New York State Attorney General has failed to comply with Congressional mandates and has failed to monitor, investigate, or bring legal action against local counties, such as Otsego, for non-compliance. *Id.* at 6.

**\*2** Liberally construing both of petitioner's pending motions, it appears that petitioner is attempting to amend his federal habeas petition. To the extent that petitioner intends these motions serve as his leave to file an amended petition, such motions are denied because they do not meet the requirements set forth in the Federal Rules of Civil Procedure or the Court's Local Rules of Practice. [2]

2    Petitioner failed to attach a complete proposed amended petition to any of his motion papers. This is a sufficient reason to deny petitioner's motion to amend as it precludes the Court from "examin[ing] the exact amendment that it is being asked to permit[;] ... ensur[ing] that all of the allegations asserted against the [respondents] are contained in a single document[;] ... [and] eliminat[ing] the confusing nature of piecemeal amended pleadings." *See Cusamano v. Sobek*, 604 F.Supp.2d 416, 508 (N.D.N.Y. 2009) (holding that compliance with this Court's local rules is "not merely technical in nature.") (internal quotation marks and citations omitted).

The filing of amended pleadings is governed by Rule 15 of the Federal Rules of Civil Procedure. An amended petition is intended to replace and supercede in its entirety the previous petition. The Federal Rules are buttressed by the Local Rules of Practice of this District ("Local Rules"), which provide, in pertinent part, that

> A party moving to amend a pleading pursuant to Fed. R. Civ. P. 14, 15, 19-22 must attach an unsigned copy of the proposed amended pleading to its motion papers. Except if the Court otherwise orders, the proposed amended pleading must be a complete pleading, which will supercede the original pleading in all respects.

N.D.N.Y.L.R. 15.1(a). The Local Rules further state that a "party shall not incorporate any portion of its prior pleading into the proposed amended pleading by reference." *Id.* "While we have insisted that the pleadings prepared by [pro se litigants] be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *McNeil v. U.S.*, 508 U.S. 106, 133 (1993).

Therefore, the Court will grant petitioner leave to file a properly-formatted motion to amend his petition. Petitioner is directed to, within **THIRTY (30) DAYS** of this Order, submit a motion to amend that complies with both the Federal and Local Rules. Any proposed amended petition must be **a complete pleading which sets forth all of the claims**

petitioner seeks to assert in this action against the person named as the respondent.

**WHEREFORE**, it is hereby

**ORDERED** that petitioner's motions, Dkt. Nos. 14 & 15, be **DENIED WITHOUT PREJUDICE**; and it is further

**ORDERED** that petitioner is granted thirty (30) days leave to file a motion to amend. **Petitioner must submit a proposed amended petition setting forth all of the claims that he wants the Court to consider, including the claims now raised in the petition and the new claims that petitioner wants to add to the petition.** The Clerk is directed to send petitioner a blank section 2254 petition for that purpose. In his proposed amended petition, petitioner must state the name and location of the court that entered the judgment of conviction, the date of the judgment of conviction, the offense(s) for which he was convicted, and the length of the sentence received. He must specify **all** grounds upon which the amended petition is based, and the facts supporting each ground, in the proposed amended petition. Petitioner must also state the date(s) upon which he filed any court proceedings in which he challenged his conviction, including the name and location of the court(s) in which he filed each application and the date(s) upon which the court(s) denied each application. He must also demonstrate either that his proposed amended petition is timely, or that it relates back to his original petition; and it is further

 *3  **ORDERED** that upon the filing of petitioner's motion to amend, the Clerk is directed to return the file to the Court for further review; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order upon respondent. Respondent shall not be required to file and serve an answer relating to the petition, Dkt. No. 8, until further order of the Court; and it is

**ORDERED** that if petitioner fails to timely submit a motion to amend his petition, the original petition, Dkt. No. 1, will remain the operative pleading; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order upon petitioner in accordance with the Local Rules.

### All Citations

Not Reported in Fed. Supp., 2022 WL 42436

**Allevato v. Howard, Not Reported in Fed. Supp. (2022)**

2022 WL 42436

---

**End of Document**                                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 9:21-CV-01159**<br>Allevato v. Howard | — | N.D.N.Y. | Oct. 22, 2021 | Docket |

**History (6)**

**Direct History (1)**

1. Allevato v. Howard 🐾
   2022 WL 42436 , N.D.N.Y. , Jan. 05, 2022

**Related References (5)**

2. People v. Allevato
170 A.D.3d 1264 , N.Y.A.D. 3 Dept. , Mar. 07, 2019

*Leave to Appeal Denied by*

3. People v. Allevato
34 N.Y.3d 949 , N.Y. , Sep. 18, 2019

*AND Habeas Corpus Dismissed by*

4. Allevato v. Howard
2022 WL 2954365 , N.D.N.Y. , July 26, 2022

5. Allevato v. Howard
2021 WL 5197183 , N.D.N.Y. , Nov. 09, 2021

6. Allevato v. Howard
2022 WL 247722 , N.D.N.Y. , Jan. 27, 2022